**FRONTIER AIRLINES, INC., Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,
Respondent.**

**No. 79–1917.**

United States Court of Appeals,
Tenth Circuit.

Argued March 14, 1980.
Decided May 27, 1980.

Charles S. Murphy of Baker & Hostetler, Washington, D. C. (Joseph B. Goldman of Baker & Hostetler, Washington, D. C. and James E. Hautzinger and William L. Hunnicutt of Dawson, Nagle, Sherman & Howard, Denver, Colo., with him on brief), for petitioner.

Mary McInnis Schuman, Gen. Counsel (Gary J. Edles, Deputy Gen. Counsel, Glen M. Bendixsen, Associate Gen. Counsel, and Alan R. Demby, Atty., Civil Aeronautics Bd., Washington, D. C. and John R. Shenefield, Asst. Atty. Gen. and Barry Grossman and Peter L. De La Cruz, Attys., Dept. of Justice, Washington, D. C., with her on brief), for respondent.

Before McWILLIAMS, DOYLE and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

Frontier Airlines, Inc. seeks review of certain orders of the Civil Aeronautics Board which required Frontier to provide so-called "back-up" service for Zia Airlines in connection with Zia's inauguration of service between Albuquerque, New Mexico and Alamogordo and Silver City, New Mexico. Frontier asserts that such orders are beyond the statutory authority of the Board. It is the Board's position that back-up orders of the present type are authorized by the provisions of 49 U.S.C. § 1389(a)(6), a part of the Airline Deregulation Act of 1978. We agree with the Board.

Frontier held a certificate of public convenience and necessity authorizing air transportation service to Alamogordo and Silver City, New Mexico. On March 23, 1979, Frontier filed a notice of intent to terminate all of its service to those cities after 90 days from the date of the notice, as is provided for by 49 U.S.C. § 1371(j). At or about the expiration of the 90-day period, the Board, pursuant to 49 U.S.C. § 1389(a)(6), ordered Frontier to continue serving Alamogordo and Silver City for a period of 30 days, the Board having been unable to find a replacement carrier which could immediately provide essential air transportation service to those cities. Thereafter, Frontier was ordered to continue its service to those cities for several additional periods of 30 days each.

Zia Airlines eventually offered to provide replacement service to Alamogordo and Silver City. Zia was a small airline and whether it could provide adequate replacement service for Frontier, on a continuing basis, was uncertain. It was in this setting that the Board ordered Frontier: (1) to continue its service to Alamogordo and Silver City until Zia actually inaugurated its replacement service to those cities, and (2) once such service by Zia was inaugurated, to remain available for a 30-day period as a back-up to Zia to make certain that essential service would be provided in the event Zia was unable to do so. Similar orders were entered requiring Frontier to back-up Zia for a total of 60 additional days. In the present proceeding Frontier seeks review of the several back-up orders, claiming that the Board has no authority to enter such orders.

At the outset the Board argues that since the back-up orders here in question have by their own terms expired, any controversy has now been rendered moot. In a similar vein, the Board also asserts that the issue sought to be raised in this Court was never fully ventilated before the Board. *Air Line Pilots Association International v. C. A. B.,* 502 F.2d 453, 457 (D.C.Cir.1974), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1391, 43 L.Ed.2d 652 (1975). We decline to dismiss Frontier's petition on either of these grounds.

A 30-day order of the type here involved is almost a classic example of a matter which is "capable of repetition, yet evading review." *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Southern Pacific Terminal Co. v. I. C. C.,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). The very nature of the present order strongly suggests the conclusion of non-mootness.

49 U.S.C. § 1486(e) does provide that no objection to any order of the Board shall be considered on judicial review unless such objection was urged to the Board, "unless there was reasonable grounds for failure to do so." The chronology of events before the Board constitutes, in our view, reasonable grounds for not fully exploring before the Board the issue raised by Frontier in this Court. The narrow issue here raised is the authority of the Board to issue a back-up order. The Board in this Court is adamant in its belief that it does have authori-

ty to issue such an order. We are advised that similar back-up orders have been issued in numerous other instances. In such circumstance it is very doubtful that the Board would have vacated its back-up orders had a motion for reconsideration been filed. Also, the question presented here is one of pure statutory construction. The general rule requiring exhaustion of remedies before an administrative agency is subject to an exception where the question is solely one of statutory interpretation. *McKart v. United States*, 395 U.S. 185, 197–8, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Under all the circumstances, we decline to dismiss the petition on any procedural basis, and prefer to address the merits of the controversy.

As indicated, the Board's position is that it has the authority to issue a back-up order of the present type under the provisions of 49 U.S.C. § 1389(a)(6). Before examining that statute, limited background is in order.

Prior to the Airline Deregulation Act of 1978, the philosophy of government regulation of air service was one of controlled entry, and controlled departure, from the field. In other words, a certificated airline could not cease serving without a finding by the Board that such was dictated by public convenience and necessity.

The Airline Deregulation Act of 1978 made substantial changes in the existing statutory law regulating air service as theretofore embodied in the Federal Aviation Act of 1958. Among other things, it made departure from a certificated air route much easier. The basic requirement was that the carrier had to give the affected parties 90 days notice before it ceased serving. 49 U.S.C. § 1371(j), (*l*). Congress, at the same time, recognized that to permit an airline to abruptly cease service after simply giving 90-day notice might well result in the loss of all air service to many small communities. Congress desired to guard against this situation, and it was the intent of Congress to make certain that small communities, such as Alamogordo and Silver City, be insured essential air service on a continuing basis for a period of time which could extend up to 10 years from the effective date of the applicable statute, October 24, 1978.

49 U.S.C. § 1389(a)(6), relied on by the Board as its authority to issue back-up orders, provides as follows:

(6) Notwithstanding section 1371(j) of this title, if an air carrier has provided notice to the Board under paragraph (3) of such air carrier's intention to suspend, terminate, or reduce service to any eligible point below the level of essential air transportation to such point, and if at the conclusion of the applicable period of notice the Board has not been able to find another air carrier to provide essential air transportation to such point, *the Board shall require the carrier which provided such notice to continue such service to such point for an additional 30-day period*, or until another air carrier has begun to provide essential air transportation to such point, whichever first occurs. If at the end of such 30-day period the Board determines that no other air carrier can be secured to provide essential air transportation to such eligible point *on a continuing basis*, either with or without compensation, *then the Board shall extend such requirement for such additional 30-day periods (making the same determination at the end of each such period) as may be necessary to continue air transportation to such eligible point until an air carrier can be secured to provide essential air transportation to such eligible point on a continuing basis.* (Emphasis added.)

We agree that there is no specific language in the foregoing statute which authorizes back-up orders of the type complained of here. However, we think that the statute, by necessary implication, authorizes the Board to issue such temporary back-up orders.

Under the applicable statutes, it is the intent of Congress that no small community shall be left without essential air services, on a continuing basis, by virtue of a certificated airline leaving the field after merely giving 90 days notice. To accomplish this

goal, a certificated airline, under the statute, may be compelled to continue air service, even after giving 90 days notice, when no replacement carrier can be found. Such is done by an order requiring the carrier to maintain its service for a 30-day period, or until a replacement carrier can be found which can itself maintain essential service on a continuing basis, whichever is sooner. Under this statutory scheme, if no adequate replacement carrier is found by the end of the first 30-day period, the old carrier can be compelled to continue its service by the means of additional 30-day orders, which could conceivably extend to the year 1988.

In our view the admitted statutory power of the Board to order Frontier to involuntarily continue its service to Alamogordo and Silver City carries with it the power to order Frontier to provide temporary back-up service for the replacement carrier in order to make certain that the replacement carrier is capable of providing essential service to the affected cities on a continuing basis.* The statutory grant of the greater implies a grant of the lesser, i. e., the power to compel actual service carries with it the power to order back-up service. See, for example, *American Trucking Ass'ns v. United States*, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953), where the Supreme Court held that the Interstate Commerce Commission had authority to issue rules and regulations governing the use by authorized motor carriers of leased equipment, despite the absence of any specific reference to leasing practices in the statute there involved. To hold to the contrary in the instant case would mean that the *moment* a replacement carrier *starts* service, the withdrawing carrier is relieved of all responsibility, even though the replacement carrier may thereafter be unable to provide essential services on a continuing basis, and may in fact fail. To permit such a result would in our view thwart Congressional intent to ensure essential services to small communities on a continuing basis.

The construction of a statute by an agency charged with its administration is entitled to substantial deference by courts. *United States v. Rutherford*, 442 U.S. 544, 553, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979). This rule of deference is particularly appropriate where "the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.'" *Power Reactor Co. v. Electricians*, 367 U.S. 396, 408, 81 S.Ct. 1529, 1535 (1961) and *Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933). An agency's construction of a controlling statute should be accepted by a reviewing court if such construction be "sufficiently reasonable." *Train v. Natural Resources Defense Council, Inc.*, 421 U.S. 60, 75, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975) and *American Petroleum Institute v. E. P. A.*, 540 F.2d 1023 (10th Cir. 1976), *cert. denied*, 430 U.S. 922, 97 S.Ct. 1340, 51 L.Ed.2d 601 (1977). In the instant case, we hold that the Board's construction of 49 U.S.C. § 1389(a)(6) is a reasonable one, consistent with language of the statute, and in accord with general Congressional intent.

The question as to whether Frontier is entitled to a governmental subsidy in connection with its back-up service for Zia, and the amount thereof, is, in our view, not a part of the present proceeding. The present petition for review involves only the propriety of the back-up order. Frontier's right to a subsidy, and the amount thereof, is a matter reserved for another day.

ORDER affirmed.

---

* The phrase "on a continuing basis" appears twice in 49 U.S.C. § 1389(a)(6), and is deemed significant.