**INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 2203, David Anderson, Glen W. Ayers, Dennis J. Eulberg, Jeffrey L. Bybee, William P. Dolan, Michael J. Dufford, Shawn P. Dufford, Tim K. Ekberg, Daniel P. Frey, Leonard J. Grant, Kenneth W. Guthrie, Timothy G. Hanlon, Edward T. Hobaugh, Jerry Kaczmarski, David L. Kelln, Wilson T. Lindquist, Howard A. MacPherson, Terry E. Malone, Mahlon L. Miller, Randy Miller, Stanley Craig Mowry, Russell L. Williams, Steven Pelster, David A. Ramos, Charles O. Rutenbeck, James A. Schanel, James E. Simington II, Bob Snider, Kevin J. Sweeney, Michael L. Turner, Paul E. Venette, Robert E. Westlund, Bruce Ginther, Richard Randall, Terry Travis, Troy Branham, Jim Madden, Dave Nuss, Floyd Couch, Dennis Day, and John L. McNair, Plaintiffs–Appellees,**

v.

**WEST ADAMS COUNTY FIRE PROTECTION DISTRICT, Defendant–Appellant.**

No. 88–1691.

United States Court of Appeals, Tenth Circuit.

June 9, 1989.

Thomas B. Buescher (Ellen M. Kelman, with him on the brief) of Brauer & Buescher, P.C., Denver, Colo., for plaintiffs-appellees.

Richard L. Shearer (Charles B. Hecht, with him on the brief) of Calkins, Kramer, Grimshaw & Harring, Denver, Colo., for defendant-appellant.

Victoria M. Bunsen, Asst. City Atty. (Martin R. McCullough and Linda E. Smoke), Westminster, Colo., filed an amicus curiae brief for City of Westminster, Colo.

Before HOLLOWAY and ANDERSON, Circuit Judges, and O'CONNOR, District Judge.*

EARL E. O'CONNOR, Chief District Judge.

The International Association of Fire Fighters, Local 2203 (Local 2203) brought this action against the West Adams County Fire Protection District (District), seeking a declaratory judgment that the District was wrongly providing its employees with compensatory time off in lieu of overtime pay in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(o). The dis-

---

* Honorable Earl E. O'Connor, Chief Judge of the United States District Court for the District of Kansas, sitting by designation.

trict court entered summary judgment for Local 2203, finding that (1) section 207(o) is ambiguous, (2) the Department of Labor's interpretation of the section should be accepted, (3) under this interpretation and the undisputed facts, the District could not use compensatory time rather than overtime, and (4) as interpreted, section 207(o) is constitutional. We affirm.

The pertinent facts are as follows: The District, a local governmental entity organized under the laws of Colorado, is a public agency within the meaning of the FLSA. *See* 29 U.S.C. 203(x). Since 1983, it has had a policy of providing employees compensatory time off rather than payment for overtime work. This policy was reiterated in late 1985 and early 1986.

Local 2203 is a labor organization. In a letter and petition addressed to the chief of the District and dated November 19, 1985, the District's employees designated Local 2203 as their representative to, among other things, negotiate with the District regarding the use of compensatory time.

Although the parties disagree as to the extent of the negotiations, if any, between the District and Local 2203, they concur that no agreement regarding compensatory time was reached. Nonetheless, the District continued to use compensatory time, and in January 1987, this action was commenced.

I. *Interpretation of the FLSA.*

▮ Generally, the FLSA requires employers to pay employees for overtime worked. However, section 207(o) allows public employers to provide employees with compensatory time in lieu of overtime in certain situations:

(1) Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.

(2) A public agency may provide compensatory time under paragraph (1) only—

(A) pursuant to—

(i) applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or

(ii) in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of the work;

. . . .

In the case of employees described in clause (A)(ii) hired prior to April 15, 1986, the regular practice in effect on April 15, 1986, with respect to compensatory time off for such employees in lieu of the receipt of overtime compensation, shall constitute an agreement or understanding under such clause (A)(ii). Except as provided in the previous sentence, the provision of compensatory time off to such employees for hours worked after April 14, 1986, shall be in accordance with this subsection.

At issue is the interrelationship between subclauses (i) and (ii). Both subclauses allow an employer to provide compensatory time pursuant to an agreement. However, under subclause (ii), unlike subclause (i), a regular practice in effect on April 15, 1986, constitutes an agreement. *See* 29 U.S.C. § 207(o)(2). In the instant case, there was no express agreement, but there was a regular practice. Thus, whether the District may use compensatory time depends on which subclause applies.

We begin our determination of whether subclause (i) or (ii) applies by focusing on the language of the statute itself. *Watt v. Alaska*, 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). We find the language of section 207(o)(2) to be ambiguous. Subclause (ii) applies to "employees not covered by subclause (i)." However, given the wording of subclause (i), it is unclear whether this means employees who do not have a representative, or employees

who are not subject to an agreement reached with a representative.[1]

Because of this ambiguity, we must resort to other sources to determine the proper construction of section 207(o).[2] Initially, we note that the Department of Labor (Department) has promulgated regulations interpreting the section. The Department's interpretation is entitled to substantial deference by the court, *United States v. Rutherford,* 442 U.S. 544, 553, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979); *Frontier Airlines, Inc. v. Civil Aeronautics Board,* 621 F.2d 369, 372 (10th Cir.1980); *Clarkson Construction Co. v. Occupational Safety and Health Review Commission,* 531 F.2d 451, 457 (10th Cir.1976), and should be accepted if it is sufficiently reasonable. *Blue Cross Association v. Harris,* 664 F.2d 806, 810 (10th Cir.1981); *Frontier Airlines,* 621 F.2d at 372 (citing *Train v. Natural Resources Defense Council, Inc.,* 421 U.S. 60, 75, 95 S.Ct. 1470, 1479, 43 L.Ed.2d 731 (1975)). In fact, the Department's construction of the section, if reasonable, is controlling even if there is an equally reasonable construction which this court would have reached de novo. *Blue Cross,* 664 F.2d at 810; *Clarkson Construction,* 531 F.2d at 457.

The pertinent regulations are found at 29 C.F.R. §§ 553.20–553.28. Section 553.23, the most relevant section, provides as follows:

(a) **General.** (1) As a condition for use of compensatory time in lieu of overtime payment in cash, section 7(o)(2)(A) of the Act requires an agreement or understanding reached prior to the performance of work. This can be accomplished pursuant to a collective bargaining agreement, a memorandum of understanding or any other agreement between the public agency and representatives of the employees. If the employees do not have a representative, compensatory time may be used in lieu of cash overtime compensation only if such an agreement or understanding has been arrived at between the public agency and the individual employee before the performance of work. *No agreement or understanding is required with respect to employees hired prior to April 15, 1986, who do not have a representative, if the employer had a regular practice in effect on April 15, 1986, of granting compensatory time off in lieu of overtime pay.*

\*　　\*　　\*　　\*　　\*　　\*

(b) **Agreement or understanding between the public agency and a representative of the employees.** (1) *Where employees have a representative, the agreement or understanding concerning the use of compensatory time must be between the representative and the public agency* either through a collective bargaining agreement or through a memorandum of understanding or other type of oral or written agreement. *In the absence of a collective bargaining agreement applicable to the employees, the representative need not be a formal or recognized bargaining agent as long as the representative is designated by the employees.* Any agreement must be consistent with the provisions of section 7(o) of the Act.

\*　　\*　　\*　　\*　　\*　　\*

---

**1.** The details of this ambiguity are as follows: Subclause (i) may be read as applying only to those employees who have a representative who has reached an agreement with the employer. In other words, employees are not covered by subclause (i) if (a) they have a representative, but the representative fails to reach an agreement with the employer, or (b) they have no representative. In either case, subclause (ii) applies, and the employer may use compensatory time pursuant to a regular practice in effect on April 15, 1986.

　　Alternatively, Subclause (i) may be read as covering all employees who have a representative, even if the representative has not reached an agreement with the employer. Subclause (ii) addresses employees who have no representative. Therefore, for represented employees, including those whose representative has failed to reach an agreement, subclause (ii) is inapplicable and an employer's regular practice does not constitute an agreement.

**2.** Even if the section's language clearly manifested Congress' intent, we would be justified in reviewing the legislative history. *Train v. Colorado Public Interest Research Group,* 426 U.S. 1, 9–10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976), *cited in Miller v. Commissioner,* 836 F.2d 1274, 1282 (10th Cir.1988).

(c) **Agreement or understanding between the public agency and individual employees.** (1) *Where employees of a public agency do not have a recognized or otherwise designated representative, the agreement or understanding concerning compensatory time off must be between the public agency and the individual employee and must be reached prior to the performance of work.* This agreement or understanding with individual employees need not be in writing, but a record of its existence must be kept. (See § 553.50.) An employer need not adopt the same agreement or understanding with different employees and need not provide compensatory time to all employees....

29 C.F.R. § 553.23 (emphasis added). As we read the regulations, there are two keys to the Department's interpretation of section 207(*o*)(2). First, if employees have a representative, an employer may use compensatory time only pursuant to an agreement between the employer and the representative. Second, employees are deemed to be represented under section 207(*o*)(2) if they merely designate a representative; the representative need not be recognized by the employer.

We must examine the legislative history of section 207(*o*)(2) to determine whether the Department's interpretation is reasonable. Congress enacted the FLSA in 1938, establishing minimum wage and maximum hours standards. Originally, the states and their political subdivisions were expressly exempted from the FLSA. 52 Stat. 1060, 29 U.S.C. § 203(d) (1940). In 1966, Congress extended the FLSA's coverage to

certain school, hospital, nursing home, and transit employees of state and local governments under the Fair Labor Standards Amendments of 1966. 80 Stat. 830–32, 29 U.S.C. § 203(d) (1966). The Supreme Court upheld the extension in *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), stating that Congress acted within its power under the Commerce Clause. In 1974, Congress further extended the FLSA's coverage to nearly all employees of state and local governments under the Fair Labor Standards Amendments of 1974. 88 Stat. 58, 29 U.S.C. §§ 203(d), 203(e), 203(x) (1974). In 1976, the Supreme Court overruled *Wirtz* and held that the 1966 and 1974 amendments were unconstitutional because the Commerce Clause does not empower Congress to enforce the FLSA against state and local governments "in areas of traditional governmental functions." *National League of Cities v. Usery*, 426 U.S. 833, 852, 855, 96 S.Ct. 2465, 2474, 2476, 49 L.Ed.2d 245 (1976). In 1985, the Court overruled *National League of Cities*, stating that the traditional governmental function test was "unsound in principle and unworkable in practice." *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 546, 105 S.Ct. 1005, 1015, 83 L.Ed.2d 1016 (1985). As a result of *Garcia*, the FLSA was applicable to state and local governments.

Against this background, Congress again undertook to amend the FLSA. Initially, the Senate passed Senate Bill 1570, which varied in wording and format, but was substantively similar to 29 U.S.C. § 207(*o*)(1), 207(*o*)(2).[3] Next, the House passed House Bill 3530, an amended ver-

---

**3.** Senate Bill 1570 stated:

(*o*)(1) Employees of a public agency that is a State, a political subdivision of a State, or an interstate governmental agency may receive overtime compensation in the form of compensatory time off at a rate not less than one and one half hours for each hour of employment for which overtime compensation is required by subsection (a) of this section pursuant to

(A) applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representative of such employees, or

(B) in the case of employees not covered by clause (A), an agreement or understanding arrived at between the employer and employee before the performance of the work.

(2) In the case of employees described in clause (B) of paragraph (1) hired prior to April 15, 1986, the regular practice in effect on April 15, 1986, with respect to compensatory time off in lieu of the receipt of overtime compensation, shall constitute an agreement or understanding under such clause (B).

S. 1570, 99th Cong., 1st Sess. §§ 207(*o*)(1), 207(*o*)(2), 131 Cong.Rec. S14044 (1985).

sion of the Senate bill which included language nearly identical to 29 U.S.C. §§ 207(*o*)(1), 207(*o*)(2).[4] *See* H.R. 3530, 99th Cong., 1st Sess., 131 Cong.Rec. H9235 (1985). Because of the disagreement between the houses,[5] the bills were referred to conference. Following consideration by the Joint Committee on Conference, the Senate receded with its disagreement to the House amendment with an amendment which was a substitute for the original Senate bill and the House amendment. *See* H.R.Conf.Rep. No. 357, 99th Cong., 1st Sess. 7 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin. pp. 651, 668. This amended Senate bill was enacted as Public Law 99–150, U.S.Code Cong. & Admin.News 1985, p. 651. *See* 29 U.S.C. § 201 *et seq.*

We consider the Senate report, which is set forth most prominently in the legislative history, *see* 1985 U.S.Code Cong. & Admin.News 651, and which accompanied a bill substantively similar to sections 207(*o*)(1) and (2), to be relevant in our examination of the legislative history. Further, we consider the House bill, which included language virtually identical to that in sections 207(*o*)(1) and (2), to be pertinent.[6]

Based on the indications of legislative intent included in these reports, we examine the reasonableness of the Department's determination that if employees have a representative, an employer may use compensatory time only pursuant to an agreement

with the representative. The Senate and House reports each include statements which lend strong support to the Department's construction. The Senate report states that "[w]here employees have a recognized representative, the agreement or understanding must be between that representative and the employer...." S.Rep. No. 99–159, 99th Cong., 1st Sess. 10 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin. News 658. The House report states that "[w]here employees have selected a representative, ... the agreement or understanding must be between the representative and the employer...." H.R.Rep. No. 99–331, 99th Cong., 1st Sess. 20, *reprinted in* 13656 U.S.Cong.Serial Set (Oct. 24, 1985). Moreover, both reports include statements which indicate that an employer's regular practice may constitute an agreement only as to employees who have no representative. *See* S.Rep. No. 99–159, 99th Cong., 1st Sess. 11, *reprinted in* 1985 U.S.Code Cong. & Admin.News 659; H.R. Rep. No. 99–331, 99th Cong., 1st Sess. 20–21, *reprinted in* 13656 U.S.Cong.Serial Set (Oct. 24, 1985). Thus, in light of the legislative history, the Department reasonably determined that if employees are represented, an employer's use of compensatory time is conditional on an agreement with the representative.

Next, we address the reasonableness of the Department's determination that employees who have designated a representa-

---

**4.** The only variation was in section 207(*o*)(2)(A)(i) of House Bill 3530, which stated:

> applicable provisions of a collective bargaining agreement between the public agency and representatives of such employees; or
>
> ....

H.R. 3530, 99th Cong., 1st Sess., 131 Cong.Rec. H9235 (1985).

**5.** The variations in the language of sections 207(*o*)(1) and (2) were not major sources of disagreement. In fact, the conference report lacks any reference to these variations in its explanation of the differences between the Senate and House versions of the 1985 amendments. *See* H.R.Conf.Rep. No. 357, 99th Cong., 1st Sess. 7–9 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 668–71.

**6.** In addition to the reports accompanying the bills, the court has examined the record of the

floor debates in both houses and the committee hearings. However, our opinion will focus on the committee reports, as they are more reliable indicators of congressional intent. *See Kelly v. Robinson,* 479 U.S. 36, 50 n. 13, 107 S.Ct. 353, 361 n. 13, 93 L.Ed.2d 216 (1986) (comments made at hearings, which were not statements of Congressional members and were not included in the official reports, are insignificant in determining legislative intent); *In re Kelly,* 841 F.2d 908, 912 n. 3 (9th Cir.1988) (committee reports provide the authoritative expression of intent; stray comments from legislators are not reliable indicators of legislative intent); *Mills v. United States,* 713 F.2d 1249, 1252 (7th Cir.1983), *cert. denied* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984) (committee reports are the most reliable indicators of congressional intent); *American Jewish Congress v. Kreps,* 574 F.2d 624, 629 n. 36 (D.C.Cir.1978) (committee reports carry greater weight than other legislative history).

tive are deemed to be represented under section 207(*o*)(2), even if the employer has failed to recognize the representative. The Senate report does not support the Department's construction. The report states that "[w]here employees have a *recognized* representative, the agreement or understanding must be between the representative and the employer," S.Rep. No. 99–159 at 10, *reprinted in* 1985 U.S.Code Cong. & Admin. News 658 (emphasis added), and that an employer may use compensatory time pursuant to a regular practice "[i]n the case of employees who have no *recognized* representative." *Id.* at 11, *reprinted in* 1985 U.S.Code Cong. & Admin. News at 659 (emphasis added). However, the House report bolsters the Department's interpretation. It states that "[w]here employees have *selected* a representative, which *need not be a formal or recognized collective bargaining agent* as long as it is a representative designated by the employees, the agreement or understanding must be between the representative and the employer...." H.R.Rep. No. 99–331 at 20, *reprinted in* 13656 U.S.Cong.Serial Set (emphasis added). Unfortunately, the report of the committee of conference fails to address these variations in the reports of the two houses of Congress. *See* H.R. Conf.Rep. No. 357, 99th Cong., 1st Sess. 7–10 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 668–71. Nonetheless, because of the support of the House report, we find that the Department reasonably determined that employees are represented if they have merely designated a representative whom the employer has failed to recognize.

## II. *Application of the FLSA Amendments.*

Under the above-discussed interpretation of section 207(*o*)(2), Local 2203 is a representative as designated by the employees' November 19, 1985, letter and petition sent to the District chief. The District's assertion that Local 2203 was not recognized and thus has no legal status under Colorado law is inapposite. The employees' designation, rather than the employer's recognition, of a representative is the event which triggers the application of section 207(*o*)(2)(A)(i), thereby precluding the use of overtime pursuant to a regular practice.

## III. *The Tenth Amendment Issue.*

■ Next, we address the District's assertion that our construction of section 207(*o*)(2) renders it unconstitutional. Essentially, the District contends that our interpretation implicitly requires state and local governments to engage in collective bargaining with employee representatives, and that such a requirement violates the tenth amendment.[7]

Tenth amendment analysis is controlled by the Supreme Court's opinion in *Garcia.* In *National League of Cities,* the Court held that the FLSA was inapplicable to state and local governments "in areas of traditional governmental functions." *National League of Cities,* 426 U.S. at 852, 96 S.Ct. at 2474. *Garcia* rejected this approach and overruled *National League of Cities,* stating that with rare exceptions, the Constitution does not "carve out" specific, substantive areas of state sovereignty which Congress may not supplant. *Garcia,* 469 U.S. at 550, 105 S.Ct. at 1017. Rather, the Constitution protects state in-

---

**7.** The Tenth Amendment of the Constitution of the United States reads as follows: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

Local 2203 asserts that we need not address the tenth amendment issue because under the FLSA amendments, public employers are not required to engage in collective bargaining; they may altogether avoid it simply by paying overtime. However, public employers' access to the compensatory time benefit provided by Con-

gress cannot be conditioned on the sacrifice of a constitutional right. *See Blackburn v. Snow,* 771 F.2d 556, 568 (1st Cir.1985) (citing *Frost v. Railroad Commission,* 271 U.S. 583, 593–94, 46 S.Ct. 605, 607, 70 L.Ed. 1101 (1926)). If the decision to engage in collective bargaining is protected from federal influence by the tenth amendment, the District is correct that it should be free to choose its own course regarding collective bargaining, without Congress enticing it down a certain path with the carrot of compensatory time. Thus, we address the tenth amendment issue.

terests through procedural and structural safeguards which assure state participation in federal governmental action. *Id.* at 552, 556, 105 S.Ct. at 1020. The Court stated:

> [W]e are convinced that the fundamental limitation that the constitutional scheme imposes on the Commerce Clause to protect the "States as States" is one of process rather than one of result. Any substantive restraint on the exercise of Commerce Clause powers must find its justification in the procedural nature of this basic limitation, and it must be tailored to compensate for possible failings in the national political process rather than to dictate a "sacred province of state autonomy."
>
> Insofar as the present cases are concerned, then, we need go no further than to state that we perceive nothing in the overtime and minimum-wage requirements of the FLSA, as applied to [the San Antonio Metropolitan Transit Authority], that is destructive of state sovereignty or violative of any constitutional provision.

*Id.* at 554, 105 S.Ct. at 1019 (citations omitted).

Given this analysis, we focus not on whether the decision to collectively bargain is a fundamental, traditional, or integral function of state and local governments,[8] but on the national political process surrounding the enactment of the 1985 FLSA amendments to determine whether there was a breakdown which denied state and local governments the opportunity to participate. Although the Supreme Court has declined to define or identify breakdowns which would invalidate congressional enactments, *see South Carolina v. Baker*, 485 U.S. 505, ——, 108 S.Ct. 1355, 1361, 99 L.Ed.2d 592, 603 (1988), we are confident that in the instant circumstances, the political process did not operate in a defective manner.[9] State and local governments were intensely involved in the proceedings leading to the FLSA amendments,[10] and thus, the amendments do not violate the tenth amendment.

## IV. *Attorney's Fees.*

■ Local 2203 asserts that it is entitled to its attorney's fees expended on appeal under 29 U.S.C. § 216(b). That section provides that an employer which violates section 207 is liable to the employees affected in the amount of the unpaid minimum wages or overtime compensation, plus liquidated damages. It further states that the court shall award prevailing plaintiffs attorney's fees and costs. If an FLSA case is appealed, the appellate court has discretion to award attorney's fees expended on an appeal. *See Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1557 (10th Cir. 1988) (a case involving a claim under the Age Discrimination in Employment Act, which incorporates the remedial provisions of the FLSA, including section 216); *Montalvo v. Tower Life Building*, 426 F.2d

---

8. The decision on whether to engage in collective bargaining is not one of the rare, express elements of state sovereignty included in the Constitution. *Compare* the article IV, section 3 guarantee of state territorial integrity mentioned in *Garcia*, 469 U.S. at 550, 105 S.Ct. at 1017, as a rare example of an explicit area of state sovereignty "carved out" by the Constitution.

9. The District tacitly concedes this point by failing to allege that state and local governments were in any way precluded from participating in the national political process.

10. Prior to the passage of the amendments, the Senate Subcommittee on Labor held three public hearings. Persons testifying included three governors, a lieutenant governor, a state senator, a representative of a state department of public safety, three mayors, two city managers, a sheriff, a police and fire commissioner, and representatives of numerous associations of public employers. *See* S.Rep. No. 99–159, 99th Cong., 1st Sess. 8–10 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 656–58.

The House Subcommittee on Labor Standards convened a hearing at which those testifying included a mayor, a state legislator, and a county executive, each of whom represented a national association of public employers. *See* H.R.Rep. No. 99–331, 99th Cong., 1st Sess. 28, *reprinted in* 13656 U.S. Cong. Serial Set (Oct. 24, 1985).

Moreover, numerous letters from representatives of state and local governments were read on the floors of both houses and were made a part of the Congressional Record.

In short, state and local governments participated substantially in the actions giving rise to the 1985 FLSA amendments.

1135, 1150 (5th Cir.1970) (an FLSA case); *see also Handler v. Thrasher*, 191 F.2d 120, 123 (10th Cir.1951) (an FLSA case declining to award attorney's fees expended on appeal in addition to the fees awarded by the trial court); *cf. Hecht Co. v. Bowles*, 321 U.S. 321, 328, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944) (an Emergency Price Control Act of 1942 case stating that based on the legislative history of the act, the phrase " 'shall be granted' is less mandatory than a literal reading might suggest").

No appellate court has previously interpreted section 207(*o*)(2); the District's appeal was reasonable. For this reason, we decline to award Local 2203 attorney's fees expended on appeal.

The judgment of the district court is AFFIRMED.