**NEVADA HIGHWAY PATROL ASSOCIATION, Jerry Seevers, Robert Woodruff, Roy Hutchings, John Rosa, Russ Benzler, Tim Hall, et al., Plaintiffs–Appellants,**

**v.**

**STATE OF NEVADA, Department of Motor Vehicles and Public Safety, Nevada Highway Patrol Division, Defendants–Appellees.**

**No. 88–15642.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1989.

Decided March 28, 1990.

William B. Aitchison, Aitchison, Snyder & Hoag, Portland, Or., for plaintiffs-appellants.

Chauncey G. Griswold and Cheryl A. Lau, Deputy Attys. Gen., Dept. of Motor Vehicles & Public Safety, Carson City, Nev., for defendants-appellees.

Before GOODWIN, Chief Judge, HALL and NOONAN, Circuit Judges.

GOODWIN, Chief Judge:

The Nevada Highway Patrol Association (NHPA), Jerry Seevers, Robert Woodruff, Roy Hutchings, John Rosa and Russ Benzler, Nevada highway patrol officers,[1] appeal a summary judgment in their action brought against the State of Nevada, the Department of Motor Vehicles and Public Safety, and the Nevada Highway Patrol Division, (collectively, "the state"), alleging that the state's overtime compensation policy violates section 7(*o*) of the Fair Labor Standards Act (FLSA), 29 U.S.C.A. § 207(*o*), (West Supp.1989) ("the Act"). We reverse and remand.

The Nevada Highway Patrol's (NHP) overtime policy allows employees to choose between monetary payments and compensatory time off as compensation for overtime worked, provided the NHP has adequate funding to make the monetary payments. If the NHP lacks funding for overtime compensation, the officers who work overtime may claim only compensatory time. As of August 1986, new NHP cadets were requested to sign a document agreeing to this overtime policy.

On February 9, 1987, the NHP issued a memorandum informing all employees that funding for overtime was depleted and only compensatory leave time would be available for overtime worked. Following this announcement, the NHPA and several NHP employees filed a purported class action in state court, alleging that the NHP's decision to provide only compensatory time violates 29 U.S.C. § 207(*o*). The state removed the case to federal court. The district court never reached the question of certifying a class.

Finding that there was no violation of section 207(*o*), the district court granted summary judgment in favor of the state. The district court based its holding on a number of legal conclusions. The court found first, as a fact, that the NHPA was not recognized by the state as the employees' bargaining representative. Section 207(*o*) accordingly did not require that the NHPA be consulted. The court then concluded as a matter of law that the state had acted in accordance with section 207(*o*) by entering into an agreement with individual employees. The court also found as a fact that individual employees were aware of the policy and had consented to it.

1. The notice of appeal in this case states that the NHPA, Jerry Seevers, Robert Woodruff, Roy Hutchings, John Rosa, Russ Benzler, "et al." appeal the district court's order granting summary judgment in this action. By letter filed November 27, 1989, in response to this court's order of November 20, 1989, appellants amended the notice of appeal to include Tim Hall. The use of "et al." following Benzler's name, however, does not comply with the specificity requirements of Fed.R.App.P. 3(c). *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 318, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988); *Johnson v. Trustees of W. Conference of Teamsters Pension Trust Fund*, 879 F.2d 651, 653 n. 1 (9th Cir.1989); *Meehan v. County of Los Angeles*, 856 F.2d 102, 105 (9th Cir.1988). Accordingly, the plaintiffs not identified by name in the notice of appeal are not parties to this appeal. Because the district court granted summary judgment prior to ruling on the plaintiffs' motion for class certification, we do not determine whether those individuals not named in the notice of appeal but who consented to join the class may participate in this suit on remand. The ability of these individuals to participate in this action is for the district court to determine when and if class certification is obtained. *See Torres*, 487 U.S. at 315, 108 S.Ct. at 2409 n. 2.

The Fair Labor Standards Act requires employers, including state and local governments,[2] to pay employees for overtime worked. 29 U.S.C.A. § 207(a)(1) (West Supp.1989). Section 207(*o*) allows public agencies to implement compensatory leave policies in lieu of monetary payments. It states that:

> (1) Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.
>
> (2) A public agency may provide compensatory time under paragraph (1) only—
>
> (A) pursuant to—
>
> (i) applicable provisions of a collective bargaining agreement, memorandum or understanding, or any other agreement between the public agency and representatives of such employees; or
>
> (ii) in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of the work; and
>
> . . . . .
>
> In the case of employees described in clause (A)(ii) hired prior to April 15, 1986, the regular practice in effect on April 15, 1986, with respect to compensatory time off for such employees in lieu of the receipt of overtime compensation, shall constitute an agreement or understanding under such clause (A)(ii). Except as provided in the previous sentence, the provision of compensatory time off to such employees for hours worked after April 14, 1986, shall be in accordance with this subsection.

29 U.S.C.A. § 207(*o*) (West Supp.1989).

This circuit has not had occasion to consider the validity of a state's compensatory overtime policy under section 207(*o*). Other circuits have grappled with this issue, however. *See Dillard v. Harris*, 885 F.2d 1549 (11th Cir.1989); *Abbott v. City of Va. Beach*, 879 F.2d 132 (4th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990); *International Ass'n. of Fire Fighters, Local 2203 v. West Adams County Fire Protection Dist.*, 877 F.2d 814 (10th Cir.1989).

The circuits that have applied section 207(*o*) all followed the same logic in approaching the interrelationship between subclauses (i) and (ii).[3] Subclause (i) ap-

2. The FLSA was originally not applicable to state and local employees. Following its enactment, Congress sought to apply the overtime and minimum wage requirements to most state and local employees. *Abbott v. City of Va. Beach*, 879 F.2d 132, 134 (4th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990). Applying the tenth amendment, the Supreme Court held that these requirements could not be applied to public employees where "traditional government functions were involved." *National League of Cities v. Usery*, 426 U.S. 833, 852, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976). This decision was overruled, however, in *Garcia v. San Antonio Metro Transit Auth.*, 469 U.S. 528, 557, 105 S.Ct. 1005, 1020, 83 L.Ed.2d 1016 (1985), and public employers must now comply with the FLSA.

3. Only the Tenth Circuit directly discussed this issue. The Fourth and Eleventh Circuits followed the same analysis without identifying any ambiguity. The Tenth Circuit explained the ambiguity as follows:

> Subclause (i) may be read as applying only to those employees who have a representative who has reached an agreement with the employer. In other words, employees are not covered by Subclause (i) if (a) they have a representative, but the representative fails to reach an agreement with the employer, or (b) they have no representative. In either case, subclause (ii) applies, and the employer may use compensatory time pursuant to a regular practice in effect on April 15, 1986.
>
> Alternatively, Subclause (i) may be read as covering all employees who have a representative, even if the representative has not reached an agreement with the employer. Subclause (ii) addresses employees who have no representative. Therefore, for represented employees, including those whose representative has failed to reach an agreement, subclause (ii) is inapplicable and an employer's regular practice does not constitute an agreement.

*Local 2203*, 877 F.2d at 817 n. 1.

plies to all employees who have a representative even if that representative has not reached an agreement with the employer. *See Local 2203,* 877 F.2d at 819. Accordingly, if the employees are represented and there is no agreement between the employer and the representative, the employer is in violation of section 207(*o*) if it institutes a compensatory leave policy. *Id.* Likewise, subclause (ii) applies only to those employees who are not represented and, as to these employees, an employer's regular practice prior to April 15, 1986 constitutes an agreement in accordance with section 207(*o*)(2)(A)(ii).

In reaching this conclusion, the Tenth Circuit relied upon the Labor Department's regulations interpreting section 207(*o*). *See* 29 C.F.R §§ 553.20–553.28 (1988). The court noted that the Secretary of Labor's ("the Secretary") interpretations are entitled to substantial deference, and should be followed if reasonable. *Local 2203,* 877 F.2d 817 (citation omitted). The court then concluded that the Department's interpretation was reasonable. *Id.* at 819. We agree with the Tenth Circuit that the legislative history of this section unambiguously dictates that, if the employees are represented, an employer may use compensatory time only pursuant to an agreement with the employees' representative. *See* S.Rep No. 159, 99th Cong., 1st Sess. 10, *reprinted in* 1985 U.S.Code Cong. & Admin.News 651, 658 [hereinafter Senate Report] ("Where employees have a recognized representative, the agreement or understanding must be between that representative and the employer...."); H.R.Rep. No. 331, 99th Cong, 1st Sess. 20 (1985) [hereinafter House Report] ("Where employees have selected a representative, ... the agreement or understanding must be between the representative and the employer....").

A determination of what is meant by the word "representative" is more problematic. We must decide whether employees, some of whom have joined an organization and designated that organization as a representative, are within subsection (i) even if the employer does not recognize the employees' designated representative. The NHPA supports an affirmative answer; the state urges a negative response. Each seeks comfort in the well-reasoned opinions of the Fourth, Tenth, and Eleventh Circuits.

██ In *Local 2203* the Tenth Circuit held that "[t]he employees' designation, rather than the employer's recognition, of a representative is the event which triggers the application of section 207(*o*)(2)(A)(i)." 877 F.2d at 820. The court looked again to the Labor Department's regulations, 29 C.F.R. § 553.23(b) (1989),[4] and concluded that because the Secretary's interpretation was supported by the House Report,[5] it was reasonable. *Local 2203,* 877 F.2d at 820. The court noted, however, that the Senate Report did not support the Department's interpretation because it refers to the employees' "recognized representative." *Id.; see* Senate Report at 10–11, *reprinted in* 1985 U.S.Code Cong. & Admin.News at 658–59. The House and Senate conference committee did not resolve this discrepancy. *See* House Conference Report at 7–10, *reprinted in* 1985 U.S.Code Cong. & Admin. News 668, 668–71.

The Fourth Circuit also examined the accuracy of the Labor Department's regulations in light of the conflicting House and Senate legislative history. *See Abbott,* 879 F.2d at 135–37. The court concluded that the regulations were reasonable only if taken in the context provided by the Secretary in "The Discussion of Major Comments" accompanying the regulations. 879 F.2d at 136–37. *See* Application of the Fair Labor Standards Act to Employees of State and

4. 29 C.F.R. 553.23(b) states in pertinent part that: "In the absence of a collective bargaining agreement applicable to the employees, the representative need not be a formal or recognized bargaining agent as long as the representative is designated by the employees...."

5. The House report states that: "Where employees have selected a representative, which need not be a formal or recognized collective bargaining agent as long as it is a representative designated by the employees, the agreement or understanding must be between the representative and the employer...." House Report at 20.

Local Governments, 52 Fed.Reg. 2012 (1987). In these comments, the Secretary stated that "[i]t is the Department's intention that the question of whether employees have a representative for purposes of FLSA section [7(*o*)] shall be determined in accordance with State or local law and practices." *Id.* at 2015, *quoted in Abbott,* 879 F.2d at 136.

Because Virginia law prohibits the police department from bargaining with representatives of its employees, the *Abbott* Court concluded that the police department could enter into individual agreements with its employees where state law prohibits agreements with the employees' representative. *Id.* at 137. Significantly, the court distinguished *Abbott* from other cases where state law did not prohibit agreements with employee representatives. *Id.* at 136 & n. 4 (including the district court's decision in *International Ass'n of Fire Fighters Local 2203 v. West Adams County of Fire Protection Dist.,* 28 BNA Wage & Hour Cas. 981 (D.Colo.1988), *aff'd,* 877 F.2d 814 (10th Cir.1989)).

In *Dillard,* the Eleventh Circuit followed the *Abbott* Court and held that the employees were not covered by subclause (i) because Georgia law does not permit state employees to bargain collectively or make an agreement or understanding with their employer. *See* 885 F.2d at 1556. The court followed the *Abbott* Court's analysis but also concluded that the plain language of the statute dictated the same result. *Id.* at 1552–53. In reaching its decision the Eleventh Circuit refused to follow the Tenth Circuit which, it concluded, had "reached a different result." *Id.* at 1550.

We agree with the Fourth and Eleventh Circuits that a determination whether the employees have a representative under 29 U.S.C. § 207(*o*)(2)(A)(i) should begin with reference to state law. According to the Secretary, unless state law is to the contrary, an agreement under subsection (i), is operative if the employees have recognized a representative. 52 Fed.Reg. 2012, 2015 (1987). We agree with the Fourth Circuit that this is the most reasonable interpretation of the FLSA.

Accordingly, we must determine how Nevada law applies to this case. Some employees are represented, but their representative has made no agreement under section 207(*o*)(2)(A). If an agreement is precluded by state law we must then look to section 207(*o*)(2)(A)(ii). If an agreement is not precluded, the Secretary's interpretation of section 207(*o*)(2)(A) would favor a holding that subclause (ii) agreements are not available to the state in this case.

The district court concluded that Nevada law precludes collective bargaining representation on behalf of state employees unless the legislature formally recognizes the employees' representative. We must review this conclusion as one of law. *Tzung v. State Farm Fire & Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

Nevada's Local Government Employee–Management Relations Act, Nev.Rev.Stat. §§ 288.010–288.270 (1987), allows local government employees to organize but only requires local governments to bargain with the employee organizations if they are recognized by the local government. *Id.* at §§ 288.140–288.160. Nevada statutory law, however, says nothing about the bargaining rights of state employees.[6]

The only state law on the issue of state employee bargaining rights is a 1969 As-

6. The state cites a state attorney general opinion for its conclusion that "[s]tate employees cannot engage in collective bargaining under the present status of Nevada law." Op.Nev.Att'y Gen. No. 640 (Jan. 19, 1970). The opinion was issued after the Local Government Employee–Management Relations Act was enacted. The attorney general reasoned that, prior to this legislation, no local or state employees could bargain collectively; because the new legislation did not apply to state employees, they still could not bargain collectively. The opinion of the state attorney general is advisory and not a binding interpretation of state law. *See Cannon v. Taylor,* 88 Nev. 89, 493 P.2d 1313, 1314 (1972) (per curiam). Moreover, even if formal collective bargaining were prohibited, we find no Nevada law supporting the proposition that, unless employees are specifically given permission, they cannot designate representatives to enter into agreements or understandings with their employers.

sembly Concurrent Resolution which recognizes the Nevada State Employees Association (NSEA) as the representative of its members "for purposes of preserving and advancing their interests as state employees." Assembly Concurrent Resolution No. 29, File No. 130, 55th Leg.Sess. (1969 Stat. 1732). The resolution further states that the NSEA should "represent its members for discussion of conditions of employment, hours and wages, while at the same time preserving the right of state employees who are not members of such association to speak for themselves." *Id.* The district court concluded that this resolution precludes the NHPA from being the employees' representative. The court also cited the Nevada legislature's rejection of a bill proposing that the NHPA be recognized as the employees' representative.

Based on this legislative history, we agree with the district court that Nevada law does not permit the NHPA from acting as the officers' representative. We do not understand, however, why the district court did not question why there was no agreement or understanding between the state and the NSEA. The appellants correctly argue that the NSEA is a lawfully recognized state employee representative. Therefore, a compensatory time-off policy in lieu of overtime compensation cannot be enacted without an agreement with the NSEA. *See* 29 U.S.C. § 207(*o*)(2)(A)(i).

The record does not reveal how many of the named appellants or members of the NHPA are members of the NSEA. The district court stated only that some of the members of the NHPA are also members of the NSEA. We must therefore remand the case for factual findings to clarify whether, as to any members of the NSEA, the state is in violation of section 29 U.S.C. § 207(*o*)(2)(A)(i) of the FLSA for not reaching an agreement with the NSEA allowing the use of compensatory time off in lieu of payment for overtime worked.

This conclusion does not end the case. The trial court on remand must look to subsection (ii) to determine whether the state is in compliance with the FLSA for those employees not represented by the NSEA. The NHPA argues that, even if the state did not violate section 207(*o*)(2)(A)(i), it did violate 207(*o*)(2)(A)(ii) because there was no agreement between the state and the individual employees regarding the overtime policy.

Where employees are not covered by 207(*o*)(2)(A)(i), the Act allows compensatory time to be given instead of cash for overtime if an agreement has been reached between the employee and the employer before the performance of the work. *Id.* § 207(*o*)(2)(A)(ii). The Act further states that "[i]n the case of employees described in clause (A)(ii) hired prior to April 15, 1986, the regular practice in effect on April 15, 1986, with respect to compensatory time off for such employees in lieu of the receipt of overtime compensation, shall constitute an agreement or understanding under such clause (A)(ii)." *Id.* § 207(*o*)(2)(A)(ii).

The state's practice as of April 15, 1986 was to allow overtime earned to be claimed for compensatory time off or money if funds were available. *See* Nev.Admin. Code ch. 284, § 284.250 (1988); Nevada Highway Patrol Procedure No. 3.19, *as amended* Jan. 15, 1989. This statute provides that if cash payment cannot be made, compensatory time off must be granted. For employees hired prior to April 15, 1986, therefore, the state's practice of awarding compensatory time off rather than overtime compensation constitutes an agreement in accordance with subsection (ii).

The state is also in compliance with 29 U.S.C. § 207(*o*)(2)(A)(ii) as to all officers hired from August 15, 1986 until the present. It is uncontroverted that each cadet hired from August 1986 until the present signed an agreement specifically accepting the overtime policy, thus fulfilling § 207(*o*)(2)(A)(ii). An employee hired between April 15, 1986 and August 1986, if indeed there are any in this appeal, apparently did not sign such an agreement. Depending on the development of a factual record, the state could be in violation of the FLSA unless it entered into an appropriate type of agreement or understanding with those employees.

The district court in granting a speedy summary judgment did not learn, on the record, whether any of the named plaintiffs or members of the NHPA were hired within this window.[7] Rather, the court held that all new employees implicitly agreed to the overtime policy as part of their employment contract because the policy was printed in the 1986 version of the employees' handbook which all new employees were advised to read. That ruling leaves dangling the question whether an implicit agreement is sufficient under § 207(*o*)(2)(A)(ii).

Appellants ask us to look to this court's decision in *Brennan v. Elmer's Disposal Serv., Inc.*, 510 F.2d 84 (9th Cir.1975). *Brennan* involved wage plans under the FLSA that are only permissible pursuant to an agreement between the employer and the employee. *See id.* at 86 n. 1 (*citing* 29 U.S.C. § 207(f)). This court held that wage plan agreements must be explicit and can not be inferred from the employer's wage plan or information placed on an employee's wage slips. *See id.* at 88. We agree with appellants that *Brennan* should be extended to agreements under section 207(*o*)(2)(A)(ii).

The House Report states that the purpose of this section was "to provide flexibility to state and local government employers and an element of choice to their employees regarding compensation for statutory overtime hours worked by covered employees." House Report at 19. While the House Report indicates that the FLSA sought to give employers flexibility in establishing their overtime policies, we do not believe that flexibility is hampered significantly by requiring employers to make explicit agreements with their employees. Otherwise, employees may not be aware of their right to choose the type of compensation for the overtime hours they worked.

We therefore conclude that the state has violated section 207(*o*)(2)(A)(ii) as to any named appellants or members of the NHPA hired between April 15, 1986 and August 1986. We remand to the district court for a determination of the necessary facts and appropriate conclusions as the facts may require.

Despite our decision that the district court erred in granting summary judgment, we decline to grant appellants' request for attorney's fees. 29 U.S.C.A. § 216(b) (West Supp.1989) provides that attorney's fees be granted to prevailing parties in FLSA cases. An award of attorney's fees may include fees for appellate services. *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir.1983) (citations omitted).

We have not yet considered whether a plaintiff who successfully appeals a grant of summary judgment is a prevailing party and entitled to attorney's fees under section 216(b). In civil rights cases, however, the Supreme Court has ruled that plaintiffs seeking attorney's fees under 42 U.S.C. § 1988 who only establish their right to a trial do not prevail on the merits of their claim and are not prevailing parties on appeal. *Hanrahan v. Hampton,* 446 U.S. 754, 758–59, 100 S.Ct. 1987, 1989–90, 64 L.Ed.2d 670 (1980) (per curiam). We have applied *Hanrahan* to summary judgment cases in the past, *see, e.g., Proctor v. Consolidated Freightways Corp.,* 795 F.2d 1472, 1478–79 (9th Cir.1986), and find likewise that it applies to the determination of prevailing party status under 29 U.S.C. § 216(b). Accordingly, the parties shall bear their own costs.

In conclusion, we reverse the district court's grant of summary judgment. The state may be in violation of 29 U.S.C. § 207(*o*)(2)(A)(i) for not reaching an agreement or understanding with the NSEA. It is also in violation of 29 U.S.C. § 207(*o*)(2)(A)(ii) as to those officers who are not members of the NSEA and who were hired between April 15, 1986 and August 1986. The district court is directed to determine which officers are members of

7. At oral argument counsel for the appellants said that none of the named appellants were hired between April 15, 1986 and August 1986.

the NSEA and which officers were hired between April 15, 1986 and August 1986.[8]

REVERSED and REMANDED.

8. Our holding affects only those individual appellants named in the notice of appeal and the members of the NHPA. *See Torres,* 487 U.S. at 318, 108 S.Ct. at 2409. We leave the question whether those individuals not named in the notice of appeal who consented to join the proposed class may participate in the suit if a class certification is obtained on remand. *See supra* note 1.