Tom **ABBOTT, individually, as President of the Virginia Beach Policemen's Benevolent Association, and as FLSA Representative of Plaintiffs, et al., Plaintiff–Appellant,**

v.

The **CITY OF VIRGINIA BEACH, Defendant–Appellee.**

No. 88–2958.

United States Court of Appeals, Fourth Circuit.

Argued May 11, 1989.

Decided July 19, 1989.

Michael Tarcissius Leibig (Joseph E. Slater, Zwerdling, Paul, Leibig, Kahn & Thompson, P.C., Kenneth W. Stolle, on brief) for plaintiff-appellant.

Randall Mahlon Blow, Asst. City Atty. (J. Dale Bimson, City Atty., on brief) for defendant-appellee.

Before WILKINS, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and TURK, Chief District Judge for the Western District of Virginia, sitting by designation.

WILKINS, Circuit Judge:

The Virginia Beach Policemen's Benevolent Association, its current and past presidents, the Virginia Beach Police Sergeants

Association, its current president, and 126 individual Virginia Beach policemen (collectively, the Policemen) appeal from the grant of partial summary judgment in favor of the City of Virginia Beach on their claims for violation of the Fair Labor Standards Act of 1938 (FLSA), as amended, 29 U.S.C.A. §§ 201, *et seq.* (West 1978 & Supp. 1989). We affirm.

I.

From April 1, 1986 through January 21, 1988, the Virginia Beach Police Department (the Department) provided compensation to its officers for overtime at a rate of one and one-half times their regular pay rate as required by the FLSA, 29 U.S.C.A. § 207(a)(2). Pursuant to Department policy, each officer had the choice of receiving his overtime compensation in money or compensatory leave or any combination thereof.[1] Thus, if an employee worked four hours overtime one day, he could elect to receive four hours overtime pay or four hours compensatory leave or any combination he chose. If the employee worked four hours overtime the next day, he could again make any election he chose. The officer exercised his option after each occasion of working overtime by submitting an Overtime and Leave Request form. On each occasion the employee's choice would be automatically honored by the Department.

The Policemen instituted this action claiming that the previous policy violated the FLSA, 29 U.S.C.A. § 207(o), because the Department refused to negotiate an agreement with their designated FLSA representatives[2] and promulgated the policy unilaterally. They sought a monetary award in exchange for their accrued compensatory leave and an equal amount as liquidated damages for alleged willful violation of the Act.[3] The district court grant-

1. As of January 21, 1988, the Department changed its policy to compensate all overtime in money. The Policemen do not challenge the current policy.

2. Tom Abbott, president of the Benevolent Association, Nicholas Sitarski, president of the Sergeants Association, and Frank LaPorta, past president of the Benevolent Association, were designated as alternate FLSA representatives by 253 individual Virginia Beach policemen.

3. At oral argument, counsel for the Policemen indicated that if the court remanded the case, they would also seek a monetary award for

ed partial summary judgment to the City holding that the policy complied with the FLSA. *Abbott v. City of Virginia Beach,* 689 F.Supp. 600 (E.D.Va.1988).

## II.

As originally enacted, the FLSA was not applicable to state or local public employers. Congress later attempted to subject almost all state and local public agencies to the overtime and minimum wage requirements of the FLSA. However, the Supreme Court held that the requirements could not be enforced against public employers where traditional governmental functions were involved. *Nat'l League of Cities v. Usery,* 426 U.S. 833, 852, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976). In 1985 the Court overruled *Usery,* holding that Congress was not limited by the nature of the work in requiring public employers to comply with the FLSA. *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 547, 105 S.Ct. 1005, 1015, 83 L.Ed.2d 1016 (1985).

After *Garcia* was decided, Congress amended the FLSA to enable public agencies to implement compensatory leave policies in lieu of monetary payments for overtime. Fair Labor Standards Amendments of 1985, Pub.L. No. 99–150, § 2(a), 99 Stat. 787 (1985) (added 29 U.S.C.A. § 207(*o*)). The amendment provides:

(1) Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.

(2) A public agency may provide compensatory time under paragraph (1) only—

(A) pursuant to—

(i) applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or

(ii) in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of the work....

29 U.S.C.A. § 207(*o*).

Virginia law prohibits the Department from collectively bargaining with representatives of its employees. *Commonwealth v. County Bd. of Arlington County,* 217 Va. 558, 232 S.E.2d 30 (1977). Consequently, the Policemen do not have a collective bargaining agreement with the Department. Nevertheless, the Policemen challenged the Department policy on the ground that the Department did not reach an agreement with their designated employee representatives prior to promulgating the policy. The district court held that a subclause (i) agreement is "only required where state law permits state and local governmental entities to recognize representatives of their employees for collective bargaining purposes." 689 F.Supp. at 603. The court concluded that the Department policy complied with section 207(*o*) since Virginia law prohibited the Department from entering into an agreement with its employees collectively. *Id.* at 604.

The Policemen contend that the district court erred in interpreting the term "representatives" to mean only recognized bargaining agents. They assert that any designee of the employees is a representative, whether recognized or not, and that if public employees designate a representative, compensatory leave cannot be provided in lieu of cash for overtime unless an agreement is reached with the representative. They further assert that if a designation is made and the employer refuses to deal with the representative, the employer cannot reach individual agreements with the employees who made the designation—it must provide cash payment. According to the Policemen, the employee representative acts for only those officers who designate him and only for as long as they choose. In the Policemen's view, the Department may enter into individual agreements with

compensatory leave which had already been utilized.

the officers who do not designate a representative and any officer may withdraw his designation and contract individually with the Department at any time. Thus, the Policemen take the position that in order to utilize compensatory leave, the Department should be required to reach an agreement with a designated representative and be bound by the agreement while an officer who designated a representative could unilaterally opt out of the agreement if he became dissatisfied.

## III.

The question here is whether section 207(*o*) permits public employers to enter into individual agreements with its employees to provide compensatory leave in lieu of money for overtime where state law prohibits the employer from entering into agreements with employee representatives. In construing section 207(*o*), the principal function of the court is to effectuate congressional intent. *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). This is a difficult task since the statute does not define the term "representatives," legislative history is contradictory, and administrative commentary is confusing. However, after considering all pertinent factors, we conclude that the district court properly interpreted the statute as allowing public employers to enter into individual overtime compensation agreements with individual employees where state law prohibits the agency from entering into agreements with employee representatives.

## A.

The first step in construing legislative intent is to examine the statutory language. *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). However, since section 207 does not define "representatives," consideration must be given to "the authoritative source" for determining legislative intent—"the Committee Reports on the bill, which 'represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.'" *Garcia v. United States*, 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984) (quoting *Zuber v. Allen*, 396 U.S. 168, 186, 90 S.Ct. 314, 324, 24 L.Ed.2d 345 (1969)). Also, the regulations promulgated by the Department of Labor are entitled to respect. *See Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2245, 68 L.Ed.2d 744 (1981).

Here, although the language of both the House and Senate bills tracks the language of subclause (i) verbatim, different views of its meaning are expressed. In explaining the provision, the House Report provides: "Where employees have selected a representative, which need not be a formal or recognized collective bargaining agent as long as it is a representative designated by the employees, the agreement or understanding must be between the representative and the employer...." H.R.Rep. No. 331, 99th Cong., 1st Sess. 20 (1985). In contrast, the Senate Report states: "Where employees do not have a recognized representative, the agreement or understanding must be between the employer and the individual employee." S.Rep. No. 159, 99th Cong., 1st Sess. 10, U.S.Code Cong. & Admin.News 1985, pp. 651, 658 (1985). The Conference Report did not address this issue. H.R.Rep. No. 357, 99th Cong., 1st Sess. (1985).

The Secretary of Labor, pursuant to the mandate of Congress, promulgated regulations implementing the statute. 29 C.F.R. Part 553 (1988). These regulations provide, in pertinent part: "In the absence of a collective bargaining agreement applicable to the employees, the representative need not be a formal or recognized bargaining agent as long as the representative is designated by the employees." 29 C.F.R. § 553.23(b)(1). The Discussion of Major Comments accompanying promulgation of the final regulations indicates that the issue now before the court was considered by the Secretary. Application of the Fair Labor Standards Act to Employees of State and Local Governments, 52 Fed.Reg. 2012 (1987).

Commentators had expressed concern that section 553.23(b)(1) would conflict with state laws, such as in Virginia, which do not require, or actually prohibit, recognition of collective bargaining agents. *Id.* at 2014. In response to this concern, the Secretary stated:

The Department believes that the proposed rule accurately reflects the statutory requirement that a [collective bargaining agreement], memorandum of understanding or other agreement be reached between the public agency and the representative of the employees where the employees have designated a representative. Where the employees do not have a representative, the agreement must be between the employer and the individual employees. The Department recognizes that there is a wide variety of State law that may be pertinent in this area. It is the Department's intention that the question of whether employees have a representative for purposes of FLSA section [207(*o*)] shall be determined in accordance with State or local law and practices.

*Id.* at 2014–15. Thus, while the Secretary followed the House position that an agreement must be reached between an employer and a representative of the employees where a representative has been designated—whether recognized or not—he also expressed intent not to preempt state law.

The Policemen also presented a letter from the congressional sponsors of the bill to the Secretary of Labor after passage of section 207(*o*). The congressional members indicated support for the Secretary's section 553.23(b) of the regulations, as "properly reflect[ing] the language and the intent of the new law." However, these *post hoc* statements are entitled to little weight, *see Weinberger v. Rossi*, 456 U.S. 25, 35, 102 S.Ct. 1510, 1517, 71 L.Ed.2d 715 (1982), particularly since the Secretary's regulation adopts the House position without resolving the conflict between the express intent of both chambers of Congress.

### B.

The district court relied upon the Senate Report in concluding that Congress intended subclause (i) to apply only where state law permits employees of state and local governmental entities to have recognized representatives. 689 F.Supp. at 602. The court did not consider the House Report and rejected the Secretary's regulation as contrary to the Senate Report. *Id.* at 603. While the district court should have considered the House Report as well as the Senate Report, it reached the proper conclusion in any event. The district court also properly declined to follow the holdings of other courts which adhered to the regulation, for those cases are distinguishable in several key aspects. *Dillard v. Harris*, 695 F.Supp. 565 (N.D.Ga.1987); *Jacksonville Professional Fire Fighters Ass'n Local 1296 v. Jacksonville*, 685 F.Supp. 513 (E.D.N.C.1987). *See also Int'l Ass'n of Fire Fighters Local 2203 v. West Adams County Fire Protection Dist.*, No. 87–F–16 (D.Colo. Mar. 18, 1988), *aff'd*, 877 F.2d 814 (10th Cir.1989); *Bleakly v. City of Aurora*, 679 F.Supp. 1008 (D.Colo.1988); *Wilson v. City of Charlotte*, 702 F.Supp. 1232 (W.D.N.C.1988). Most importantly, they did not involve a situation where, as here, a public employer, who was prohibited by state law from contracting with employee representatives, gave each employee an absolute choice of whether to accept compensatory leave in lieu of money.[4]

Beneath the conflicting and confusing rhetoric of the administrative and legislative history, several matters are clear. The Secretary expressly declined to preempt state laws regarding labor relations between public employers and employees. And, the House Report stated that the purpose of section 207(*o*) was "to provide flexibility to state and local government employers and an element of choice to their employees regarding compensation for statutory overtime hours worked by cover-

---

**4.** In the Colorado cases, there were no assertions by the public employers that they were prohibited by state law from contracting with the employee representatives. And, in the North Carolina and Georgia cases, the employer retained the sole discretion on whether to provide compensatory leave or money for overtime.

ed employees." H.R.Rep. No. 331, 99th Cong., 1st Sess. 19 (1985).

The Department policy fulfilled the central purposes of section 207(*o* ). The policy allowed the Department some flexibility in dealing with overtime compensation and provided the individual Policemen not only an "element of choice," but an *absolute* choice in electing compensatory leave, money, or any combination thereof each time they worked overtime.

In the final analysis, the district court holding that public employers may enter into these types of individual agreements with its employees where state law prohibits agreements with employee representatives sustains state law and under the circumstances here, effectuates fairness, flexibility and choice.

AFFIRMED.