964 F.2d 1391
 30 Wage & Hour Cas. (BNA) 1497, 121 Lab.Cas.
P 35,640
 Marvin O. WILSON, Jr., John A. Auten, III, Terry L. Austin,
Phillip A. Johnston, Wendell M. Jolly, Jr., Sebron L.
Thompson, Harvey W. James, Jr., Robert L. Honeycutt, Howard
Darrell Key, Thomas Richard Craft, Steven L. Ridge, Oscar
William White, Billy Wayne Oliver, Harry A. Rogers, Dick
Newhouse, Tommy R. Wilburn, Charles E. Melton, Larry G.
Metts, Clay E. Morris, Traci L. Morris, David G. Charles,
John A. Auten, IV, David J. Black, E.E. Christenbury,
Charles Alexander Roseburough, Carvie E. Woodard, George Lee
White, K.R. Blake, S.D. Speaks, J.M. Clampitt, William T.
Honeycutt, Barry L. Boyd, Darrell E. Furr, Jerome Martin
Frederick, James C. Geer, J.L. Newell, Phillip E. Chiles,
Ben Ray Norwood, Theresa R. Alexander, Ward S. Howie, Frank
E. Reid, Michael T. Carleton, Connie William Morgan, William
A. Strain, Michael J. Corigliano, Melvin D. Balles, Scott A.
Dawkins, David Lee Newell, Michael Spath, William F. Lowe,
T.A. McKenzie, Donald W. Taylor, Gary Lee Isenhour, Frank S.
Pressley, William D. Henderson, Danny Jack Pharr, David
Eugene Scott, Tom C. Harllee, Patrick F. Starnes, Clifton M.
Mullis, Vincent T. Severn, David K. Ledbetter, Frederick O.
Smith, Jerry A. Rodgers, William F. Freeman, Eli J. Robles,
James F. Ellis, D.L. Ghorley, D.C. Nance, L.E. Black, J.C.
Black, D.W. Stephens, C.D. Gaskin, J.D. Barefoot, D.C.
Moore, Christopher D. Gordon, James Robert Shaffner, Garry
E. McCormick, Richard L. Albaugh, Michael E. Saye, Robert W.
McDonald, Ronald Leon Shumaker, Levi V. Steele, Doyle Neal,
Fred B. Archie, Darrell R. Collins, Jackie C. Cress, William
R. Brown, Sr., Jeffrey L. Campbell, Thomas A. Davis, Randy
P. Mowrey, J. Michael Keffer, Calvin L. Fink, John A.
Hawley, Jr., Phyllis S. Bost, William R. Summey, George
Baxter Holmes, James Greg Taylor, Robert William Kennard,
Gary Wayne Workman, Rex Donald Hovey, William Michael
Stegall, Donald Parks Poplin, James David Thomas, James
Louis Bradford, Ronald Lee Smith, Jerry Lynn Shope, Jerry W.
Killian, Blair D. Carr, II, Andrew Preston Osborne, Sue N.
Tarantino, R.L. Pharr, Gary Miller, Roy Kenneth Bradley,
Allen Keith Middleton, Thomas Wayne Helms, Larry Malbourne
Kepley, Jr., Robert J. Brishey, Johnny E. Wiley, Lindsay D.
Keith, Edward Wayne Murray, Walter Clinton Caldwell, Jr.,
Sharon Beal Black, Homer Larry Holtzclaw, William Duncan
Love, Van W. Sullivan, Everette A. Passaly, Jr., Charles E.
Jarrell, Barry L. Brown, William B. Cochran, Nathan Douglas
Hooks, Graylen D. Hare, Stephen S. Brotherton, Tommy Curtis
Link, Cornice Alton Butler, Edward Rogers Funderburk, Jack
Timothy Gettis, Anthony Dwayne McWhirter, Eugene Perry
Forte, Bobby W. Davis, Kenneth D. Crump, Walter Randy
Kinsey, Alan S. Hoffman, George Richard Parsley, Donald
Cecil Mull, Roy Stuart Smith, III, Andrew Reid Pickens,
Alfred Allen Davis, Jason William Boyd, John Lee Carothers,
Moses David, Raymond Hugh Thrower, Frankie Wayne Greer,
David Roe Lane, Jr., Lynn Chandler, Francis Marion McGowan,
Plaintiffs-Appellees,
v.
CITY OF CHARLOTTE, N.C., Defendant-Appellant.
 No. 89-2388.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 3, 1991.
Decided May 8, 1992*.
 
 Freeman Douglas Canty, Office of the City Atty., Charlotte, N.C., argued, for defendant-appellant.
 Thomas Aquinas Woodley, argued (Gregory K. McGillivary, on brief), Mulholland & Hickey, Washington, D.C., for plaintiffs-appellees.
 Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, WILKINSON, WILKINS, NIEMEYER, HAMILTON, and LUTTIG, Circuit Judges.
 OPINION
 WILKINS, Circuit Judge:
 
 
 1
 The City of Charlotte appeals the order of the district court granting summary judgment in favor of 156 individual Charlotte fire fighters (collectively, the "Fire Fighters") on their claim that the City violated section 7(o) of the Fair Labor Standards Act, 29 U.S.C.A. § 207(o) (West Supp.1991). After oral argument before a panel, rehearing was ordered before this court sitting en banc. We now reverse the grant of summary judgment.
 
 I.
 
 2
 Appellee Marvin O. Wilson, Jr., president of the Charlotte Fire Fighters Association Local 660, dispatched a letter dated December 3, 1985 to Fire Chief R.L. Blackwelder challenging the City's practice of awarding Fire Fighters compensatory time instead of cash payment for overtime hours worked. In his letter, Wilson referred to recently enacted amendments to the Fair Labor Standards Act and asserted that under newly added section 7(o) the City could not provide compensatory time in lieu of cash payment for overtime without first reaching an agreement with the representative of the Fire Fighters. He notified Chief Blackwelder that he and 155 other Fire Fighters had selected Local 660 of the International Association of Fire Fighters as their representative under subsection 7(o)(2)(A)(i) and that, absent an appropriate agreement under this section, the City was required to pay cash for all overtime work. Chief Blackwelder refused to bargain with Local 660 because North Carolina law prohibited contracts between governmental units and labor unions. The Fire Fighters instituted this action in February 1988, claiming that the compensatory time policy violated section 7(o) of the Act because the City refused to recognize and negotiate with Local 660 as the Fire Fighters' designated representative. They sought a monetary award in the form of liquidated damages equal to their accrued unpaid compensation for overtime. Granting the Fire Fighters' motion for partial summary judgment, the district court held that the City was obligated to enter into an agreement with the Fire Fighters' designated representative in order to provide compensatory time.
 
 II.
 
 3
 As originally enacted, the Fair Labor Standards Act was not applicable to state or local public employers. Although Congress attempted to subject state and local governmental employers to the minimum wage and overtime requirements of the Act, the Supreme Court held that these requirements were not enforceable against public employers when traditional governmental functions were involved. National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). In Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the Court overruled National League of Cities and held that employees of a municipal transit authority were entitled to the protection afforded by the minimum wage and overtime requirements of the Act. Id. at 554-57, 105 S.Ct. at 1019-21.
 
 
 4
 In response to the Garcia decision, Congress amended provisions of the Act applicable to state and local public agencies in order to align the statutory scheme with the recent decision and to prevent undue hardship to public employers resulting from the financial burden of paying cash overtime compensation to public employees. See S.Rep. No. 159, 99th Cong., 1st Sess. 7-8 (1985), reprinted in 1985 U.S.C.C.A.N. 651, 655. These amendments included the addition of section 7(o) that provides in pertinent part:
 
 
 5
 (1) Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.
 
 
 6
 (2) A public agency may provide compensatory time under paragraph (1) only--
 
 
 7
 (A) pursuant to--
 
 
 8
 (i) applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or
 
 
 9
 (ii) in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of the work ...
 
 
 10
 (B) ....
 
 
 11
 In the case of employees described in clause (A)(ii) hired prior to April 15, 1986, the regular practice in effect on April 15, 1986, with respect to compensatory time off for such employees in lieu of the receipt of overtime compensation, shall constitute an agreement or understanding under such clause (A)(ii). Except as provided in the previous sentence, the provision of compensatory time off to such employees for hours worked after April 14, 1986, shall be in accordance with this subsection.
 
 
 12
 29 U.S.C.A. § 207(o).
 
 
 13
 Following the addition of section 7(o ) to the Act, a public employer who wishes to provide compensatory time off in lieu of monetary compensation for overtime work to its employees has several courses of action available. Pursuant to subsection 7(o )(2)(A)(i), it may reach an agreement with a representative of its employees. 29 U.S.C.A. § 207(o )(2)(A)(i). If an agreement is not reached with the employees' representative, a public employer may enter into an agreement with individual employees. 29 U.S.C.A. § 207(o )(2)(A)(ii); Dillard v. Harris, 885 F.2d 1549, 1552 (11th Cir.1989) (finding that, within the meaning of subsection (ii), employees are not "covered by" subsection (i) unless an agreement has been reached with the employees' representative), cert. denied, --- U.S. ----, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990); but see International Ass'n of Fire Fighters, Local 2203 v. West Adams County Fire Protection Dist., 877 F.2d 814 (10th Cir.1989) (holding public agency may not reach agreement with individual employees if those employees have designated a representative). In the absence of an agreement, and subject to the exception for employees hired prior to April 15, 1986, the Act mandates that a public employer compensate its employees for overtime work with monetary payments. 29 U.S.C.A. § 207(o ); Dillard, 885 F.2d at 1556.
 
 
 14
 As noted above, the Act affords an exception to its general provision that the public agency must compensate its employees with cash for overtime work unless an agreement for compensatory time has been reached. See 29 U.S.C.A. § 207(o )(2)(B). For "employees not covered by subclause (i)," 29 U.S.C.A. § 207(o )(2)(A)(ii), who were "hired prior to April 15, 1986, the regular practice in effect on April 15, 1986, with respect to compensatory time off for such employees in lieu of the receipt of overtime compensation, shall constitute an agreement or understanding under such clause (A)(ii)," 29 U.S.C.A. § 207(o )(2)(B). Thus, in the absence of an agreement under subsection 7(o )(2)(A)(i), with regard to employees hired prior to April 15, 1986, the regular practice with respect to overtime compensation in effect on that date is deemed to be an agreement under subsection 7(o )(2)(A)(ii).
 
 
 15
 Turning to the present controversy, it is undisputed that no agreement was reached between the City and the Fire Fighters or their representative and that the Fire Fighters were hired prior to April 15, 1986.[1] Additionally, it is clear that the regular practice in effect on that date was for the City to award and the employees to accept compensatory time in lieu of cash payment for overtime work. While Wilson's letter to Chief Blackwelder may have expressed the employees' dissatisfaction with the practice, it did not negate the existence of the regular practice, one that continued after the letter was written. We conclude, therefore, that this regular practice "constitute[d] an agreement or understanding under such clause (A)(ii)." 29 U.S.C.A. § 207(o )(2)(B); see also Dillard, 885 F.2d at 1553.
 
 III.
 
 16
 Noting that the letter from Wilson to Chief Blackwelder was written prior to April 15, 1986, the Fire Fighters contend that because a representative had been designated prior to this date the City may not unilaterally elect to continue the regular practice of providing compensatory time in lieu of cash. The Fire Fighters first suggest that Abbott v. City of Virginia Beach, 879 F.2d 132 (4th Cir.1989), cert. denied, 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990), is controlling and assert that it holds that if a public employer refuses to recognize the employees' designated representative the employer is required to allow each employee the choice of compensatory time or cash. Second, the Fire Fighters contend that a Department of Labor regulation precludes reliance by the City on the practice in place prior to April 15, 1986.
 
 
 17
 The Fire Fighters misread Abbott. In Abbott, as in this case, the city refused to entertain negotiations with the union representative on the basis that state law prohibited a public entity from engaging in collective bargaining. We held that subsection 7(o )(2)(A)(ii) permitted a public employer to offer its employees a choice between compensatory time or cash for overtime. 879 F.2d at 137. Abbott, however, does not mandate that when a subsection 7(o )(2)(A)(i) agreement is not reached, a subsection (ii) agreement with individual employees must be reached. Indeed, nothing in Abbott, or in section 7(o ), can be read to require that the parties reach an agreement.
 
 
 18
 The Department of Labor regulation on which the Fire Fighters rely provides in part:
 
 
 19
 No agreement or understanding is required with respect to employees hired prior to April 15, 1986, who do not have a representative, if the employer had a regular practice in effect on April 15, 1986, of granting compensatory time off in lieu of overtime pay.
 
 
 20
 29 C.F.R. § 553.23(a)(1) (1991) (emphasis added). The Fire Fighters contend that because they had designated Local 660 as their representative prior to April 15, 1986, the City may not rely upon the regular practice in effect on that date. We assume, without deciding, that this regulation is a proper exercise of the Secretary's authority because on the facts presented by this appeal, the regulation does not mandate that the Fire Fighters prevail.[2]
 
 
 21
 In adopting this regulation, the Department of Labor acknowledged that public employers in some states would be prohibited from recognizing and negotiating with certain employee representatives. See Dillard, 885 F.2d at 1556. Consequently, the Department expressed its " 'intention that the question of whether employees have a representative ... shall be determined in accordance with State or local law and practices.' " Abbott, 879 F.2d at 136 (quoting 52 Fed.Reg. 2012, 2014-15 (Jan. 16, 1987)). Because Local 660 was not a representative whom the City could recognize consistently with state law, see N.C.Gen.Stat. § 95-98 (1989), the Fire Fighters did not have a representative within the meaning of the regulation and, therefore, are not assisted by 29 C.F.R. § 553.23(a)(1).[3] See Dillard, 885 F.2d at 1556.
 
 IV.
 
 22
 In sum, in order to determine if the City properly continued to provide compensatory time off in lieu of monetary compensation for the Fire Fighters, we are first called upon to decide whether the Fire Fighters have entered into an agreement with the City under either subsection (i) or (ii). No "collective bargaining agreement, memorandum of understanding, or any other agreement" was reached, nor have individual agreements with the employees been struck. However, because the Fire Fighters are not covered by subsection (i); because they were hired prior to April 15, 1986; and because the regular practice prior to that date was to award compensatory time for overtime work, that practice is deemed to constitute an agreement under subsection (ii). Consequently, by virtue of this statutorily imposed agreement, the City may continue to provide compensatory time for overtime work.
 
 
 23
 REVERSED AND REMANDED.
 
 
 24
 LUTTIG, Circuit Judge, concurring in part and concurring in the judgment in part:
 
 
 25
 I join parts I, II, and IV of the court's opinion, but concur in only the result reached in part III.
 
 I.
 
 26
 I agree with the holding of the court in part II of its opinion that, under section 7(o ) of the Fair Labor Standards Act, 29 U.S.C. § 207(o), whether the City of Charlotte may provide the Fire Fighters compensatory time in lieu of cash payment for overtime hours worked depends solely upon whether there is an agreement that provides for compensatory time payments. See Dillard v. Harris, 885 F.2d 1549, 1554 (11th Cir.1989), cert. denied, --- U.S. ----, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990). The court properly refuses to rest its decision in part II on whether appellees have a designated representative to negotiate with the City over compensation or on whether state law prohibits collective bargaining. Whether there is an employee representative and whether state law prohibits collective bargaining are, under the statute and the court's holding today, simply irrelevant. Section 7(o ) distinguishes only between employees covered by agreements and those not covered by agreements, not between represented and unrepresented employees. If there is an agreement of a kind specified in either subsection (2)(A)(i) or subsection (2)(A)(ii), compensatory time may be provided; if there is no such agreement, regardless of the reason, the public employer is forbidden to award compensatory time for overtime hours worked.
 
 
 27
 The Fire Fighters and the dissent argue that a public agency is required by subsection (2)(A)(i) to negotiate with an employee chosen representative and that the agency is prohibited from negotiating individual agreements under subsection (2)(A)(ii) if a representative has been selected by the employees. See Nevada Highway Patrol Ass'n v. Nevada, 899 F.2d 1549, 1553 (9th Cir.1990); International Ass'n of Fire Fighters, Local 2203 v. West Adams County Fire Protection Dist., 877 F.2d 814, 818-20 (10th Cir.1989).[1] The majority again correctly declines to engraft onto subsection (2)(A)(i) an affirmative requirement to negotiate in the absence of congressional direction and rejects as unsupported by the statute's language the contention that individual agreements with employees are prohibited if the employees have selected a representative.
 
 
 28
 The dissent, notably, does not even contend that section 7(o ) itself imposes a requirement that the public agency reach an agreement with a designated employee representative as a precondition to the award of compensatory time to represented employees; its only argument is that the legislative history and the Secretary of Labor's regulatory interpretation of the statute should be given dispositive weight because of what the dissent asserts is an ambiguity in the statute. The statute, however, is not at all ambiguous. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (holding that courts and agencies alike are bound to effect an unambiguous statute). The reference in subsection (2)(A)(ii) to "employees not covered by subclause (i)" can only be to employees who are not subjects of an agreement between their agency and their representative. It cannot grammatically (and does not logically) refer to employees who are unrepresented because the compound objects of the prepositional phrase "pursuant to" in subsection (i) are the forms of agreement enumerated therein. The subsection does not denominate a class of represented employees; it identifies certain agreements (in addition to those in subsection (ii)) that will satisfy the requirement in subsection (2)(A) that compensatory time be provided pursuant to an agreement.
 
 
 29
 The dissent searches in vain for ambiguity that would justify resort to the legislative history of section 7(o ) and the Secretary of Labor's regulatory interpretation of the statute, because these are the only "authorities" that even arguably support its position that Congress intended to impose a requirement that a public agency either reach an agreement with an employee representative or forgo an award of compensatory time. We will never know whether, as the dissent concludes solely from the legislative history, Congress intended to impose this requirement. We do know, however, that the statute did not impose such a requirement. And in the absence of such a requirement in the statute, we are without authority to impose one. In a system of laws, we have no more authority to give effect to a provision that was intended but not enacted, than we have authority to give effect to a provision that was never intended. The majority recognizes this limitation on the judicial power in its interpretation of section 7(o ) in part II, and I join this portion of its opinion.
 
 II.
 
 30
 I cannot, however, join the majority's interpretation of the applicable Labor Department regulations in part III of its opinion. In part III, the majority holds that Local 660 is not a "representative" within the meaning of 29 C.F.R. § 553.23 "[b]ecause [it] was not a representative whom the City could recognize consistently with state law." Majority op. at 1396. The majority offers no support for this interpretation of the term "representative," and the regulation itself would appear to contradict such an interpretation. The regulation expressly states that "the representative need not be a formal or recognized bargaining agent as long as the representative is designated by the employees." 29 C.F.R. § 553.23(b)(1); see also H.R.Rep. No. 331, 99th Cong., 1st Sess. 20 (1985) [hereinafter House Report] ("[A] representative ... need not be a formal or recognized collective bargaining agent as long as it is a representative designated by the employees...."). The majority's interpretation of the regulation also conflicts with its interpretation of section 7(o ). The premise of the court's interpretation of section 553.23 is that if state law permitted collective bargaining by the City, the City would have to pay cash for overtime hours worked unless it reached an agreement with Local 660. Cf. Dillard, 885 F.2d at 1555-56. As noted, however, the majority holds in part II of its opinion that the only condition on the provision of compensatory time is that it be provided pursuant to one of the forms of agreement specified in subsections (2)(A)(i) or (ii). Because I believe that the majority incorrectly interprets section 553.23 and in doing so undermines its own interpretation of section 7(o ), I concur only in the result reached in part III.
 
 
 31
 I agree with the Fire Fighters and the dissent that Local 660 is a "representative" for purposes of the statute and the regulation. In my view, North Carolina's prohibition against collective bargaining by public agencies, see N.C.Gen.Stat. § 95-98, has no bearing whatsoever on whether the local is a "representative" within the meaning of the regulation. But see State of Nevada Employees' Ass'n, Inc. v. Bryan, 916 F.2d 1384, 1388-90 (9th Cir.1990); Nevada Highway Patrol, 899 F.2d at 1554; Dillard, 885 F.2d at 1555-56; Abbott v. City of Virginia Beach, 879 F.2d 132, 135-36 (4th Cir.1989), cert. denied, 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990). I would hold, however, that nothing in either the statute or the regulation requires that a public agency reach an agreement with an employee representative or precludes an agency from striking individual agreements with its employees where a representative has been designated.[2]
 
 
 32
 The majority in part interprets the term "representative" in the manner it does so as to avoid an interpretation that it mistakenly believes would dictate a result that would conflict with the statute--namely, that the City would be required to reach an agreement for compensatory time with the Local or pay cash for overtime work. See infra at 1400. Such a requirement would, indeed, conflict with the court's interpretation of the statute, under which subsections (2)(A)(i) and (ii) set forth alternative means by which a public agency may legally provide compensatory time. But contrary to the majority's assumption, it would not follow from the fact that Local 660 is a legitimate "representative" that the City would be required under the regulation either to reach an agreement with the Local or to pay its employees cash. Even if this were the consequence of the opposing interpretation, the better course would be simply to invalidate the regulation as inconsistent with the statute. See Chevron, 467 U.S. at 843 n. 9, 104 S.Ct. at 2781-82 n. 9 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").
 
 
 33
 Section 553.23(a)(1) provides in relevant part that "[n]o agreement or understanding is required with respect to employees hired prior to April 15, 1986, who do not have a representative, if the employer had [in effect on that date] a regular practice" of granting compensatory time. The purpose of this portion of subsection (a)(1) is merely to define one class of employees to whom public agencies may award compensatory time without an express agreement or understanding. The negative inference from this language is that compensatory time may be awarded to all other employees only pursuant to an express agreement, as the statute by terms requires. Nothing in either the language or logic of this portion of the regulation suggests that if there is a representative, then there must be an agreement between the agency and the representative before compensatory time may be awarded. To the extent that the Fire Fighters' argument rests on this portion of the regulation, it should be rejected on this basis alone.
 
 
 34
 The Fire Fighters' principal contention, however, is not that subsection (a)(1) requires that an agency reach an agreement with a designated representative if it is to provide compensatory time to its employees, but rather that subsection (b)(1) imposes such a requirement. The majority rejects the Fire Fighters' argument based on this provision without discussion on the grounds that they do not have a representative within the meaning of the regulation. See majority op. at 1396 n. 3. Subsection (b)(1) provides that, "[w]here employees have a representative, the agreement or understanding concerning the use of compensatory time must be between the representative and the public agency either through a collective bargaining agreement or through a memorandum of understanding or other type of oral or written agreement." 29 C.F.R. § 553.23(b)(1). The Fire Fighters contend that this portion of the regulation affirmatively requires an agreement between the public agency and the representative. This is a plausible reading of the regulation. I would interpret this portion of the regulation, however, merely as an implementation of the statute's requirement that compensatory time be awarded pursuant to an agreement in one of the specified forms. The structure of section 553.23 strongly suggests, if not confirms, that this was the subsection's only purpose. I would not read the section to impose an affirmative negotiation requirement where none exists in the statute itself. If I concluded that the Fire Fighters' interpretation were the only plausible interpretation of the regulation, however, I would invalidate the regulation as contrary to the statute.[3]
 
 
 35
 I suspect that fundamentally, the majority strains to interpret the regulation in the way that it does so as to preserve this court's decision in Abbott. Abbott proceeds from the same erroneous premise as the majority's interpretation of the regulation in this case. Compare Abbott, 879 F.2d at 135 ("The question here is whether section 207(o) permits public employers to enter into individual agreements with its employees ... where state law prohibits the employer from entering into agreements with employee representatives.") with majority op. at 1396 ("Because Local 660 was not a representative whom the City could recognize consistently with state law ... the Fire Fighters did not have a representative within the meaning of the regulation...."). It may well be that the majority's interpretation of the statute is in tension, if not directly at odds, with this court's reasoning in Abbott. I would abandon Abbott 's rationale, however, before I would impose through the regulation a requirement that nowhere exists in the statute.
 
 
 36
 Under the interpretation of the statute and the regulation that I would adopt, the court would not be required to read into the statute a requirement that the public agency agree with a representative selected by its employees, as the Fire Fighters and the dissent must do. Nor would it be required to force an interpretation of the regulation that is ultimately unsuccessful in harmonizing the regulation with the statute, as the majority does. Moreover, my interpretation would be uniform nationwide, without regard to the patchwork of state laws regarding collective bargaining by public employees that would otherwise condition rights under the Fair Labor Standards Act "upon the mere fortuity of geography." Dissenting op. at 1403.
 
 
 37
 If the statute and regulation are read in the manner that I suggest they should be, they are consistent with each other, and they result in a scheme that reasonably implements Congress' objectives in amending the Fair Labor Standards Act. Subsection (2)(A) ensures that compensatory time is provided "only pursuant to" an agreement, and subsections (i) and (ii) in turn define the agreements pursuant to which compensatory time may be provided. Subsection (i) authorizes compensatory time pursuant to "a collective bargaining agreement," a "memorandum of understanding," or, significantly, "any other agreement" between the public agency and an employee representative. Thus, even if collective bargaining agreements between a union and a public agency are prohibited by state law, an agency and an employee representative may still agree to compensatory time under subsection (i) by entering into some "other agreement."
 
 
 38
 Subsection (ii) defines an alternative, permissible form of agreement. For "employees not covered by subclause (i)"--employees who have not entered into a "collective bargaining agreement," a "memorandum of understanding," or "any other agreement" with their employer through their representative--it permits the provision of compensatory time pursuant to "an agreement or understanding arrived at between the employer and employee before the performance of the work." Thus, if the employees have chosen a representative and the agency does not reach an agreement with that representative for any reason, the agency may enter into individual agreements under subsection (ii) with any employee who wishes. The City's "regular practice" of awarding compensatory time prior to April 15, 1986, for example, constitutes such an individual agreement.
 
 
 39
 The statute and regulation, so read, also maximize the means available to public agencies and their employees to reach agreements providing for compensatory time, consistent with congressional intent. The one indisputable purpose for Congress' enactment of section 7(o ) was to free up public funds by encouraging and facilitating compensatory time awards in lieu of cash payment for overtime hours worked. See House Report, supra, at 19. The dissent's interpretation of the statute and the regulation would completely frustrate this purpose, and the majority's interpretation of the regulation promises to do the same.
 
 ERVIN, Chief Judge, dissenting:
 
 40
 I respectfully dissent.
 
 
 41
 I cannot agree with the conclusion reached by the majority in interpreting section 207(o ). The majority's position has the inequitable result of resting the rights of public employees under the federal law that purports to protect them, the Fair Labor Standards Act ("the Act"), on the idiosyncracies of state legislatures. Under the majority's view, public employees in states like North Carolina, which prohibit public agencies from engaging in collective bargaining, have fewer rights than those in states that do not have similar prohibitions. I do not think that Congress intended for the protections afforded by the Act to hinge upon the accident of the state in which the employee happens to reside. I also do not think that Congress intended to allow a public employer to force an individual employee to accept compensatory time instead of cash for overtime worked as a condition of taking the job when the employees have designated a representative to negotiate jointly for them. Such an "agreement" is nothing of the sort; it is in reality a unilateral decision by the employer without employee consultation. If the public agency cannot or will not, for whatever reason, deal with the representative chosen by the employees, then it simply loses its right to use compensatory time in lieu of cash under the terms of the Act.
 
 
 42
 The majority reaches its result by making an ambiguous statute clear through judicial fiat. As the Tenth Circuit recognized, section 207(o) is ambiguous. See International Ass'n of Firefighters, Local 2203 v. West Adams County Fire Protection Dist., 877 F.2d 814, 81617 & n. 1 (10th Cir.1989). The majority assumes that if a public agency does not enter into an agreement with the representative of its employees to provide compensatory time instead of paid overtime pursuant to subsection 207(o )(2)(A)(i), it may enter into such an agreement with its individual employees pursuant to subsection 207(o )(2)(A)(ii). Maj. op. at 1394. Without discussion, the majority reads subsection (ii), which encompasses "employees not covered by subclause (i)," to refer unambiguously to employees whose representative has not reached an agreement with the agency, rather than, as is equally plausible, to employees who have not designated a representative to reach an agreement with the agency.
 
 
 43
 Answering the question of whether "employees not covered by subclause (i)" refers to those who lack an agreement or those who lack a representative disposes of this case. If the phrase refers to the lack of an agreement, as the majority assumes, the fact that the Fire Fighters did not reach an agreement with the City before April 15, 1986 means that the City's regular practice of giving only compensatory time constitutes a valid agreement with those employees pursuant to subsection (ii), and the lack of a subsequent agreement means that the City may force individual employees hired after that date to agree to the same policy as a condition of employment. If the phrase refers to the lack of a representative, however, the fact that the Fire Fighters have designated a representative, Local 660, means that the City can only award compensatory time by reaching an agreement with this representative pursuant to subsection (i). The language of this poorly drafted statute simply does not indicate which reading is the correct one.
 
 
 44
 We must therefore look to other sources to determine the proper construction of section 207(o)(2). The Secretary of Labor ("the Secretary") has promulgated a regulation interpreting this section. See 29 C.F.R. §§ 553.20-553.28 (1991). Because the statute is ambiguous on the issue, we are bound to accept the Secretary's interpretation if it is "based on a permissible construction of the statute." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). It matters not if the Secretary's construction was not the only permissible one or even if we would have reached a contrary interpretation had we had considered the matter de novo. Id. at 843 n. 11, 104 S.Ct. 2778, 2781-82 n. 11. In either case, the Secretary's interpretation controls.
 
 In relevant part, the regulation provides:
 
 45
 (a) General. (1) As a condition for use of compensatory time in lieu of overtime payment in cash, section 7(o)(2)(A) of the Act requires an agreement or understanding reached prior to the performance of work. This can be accomplished pursuant to a collective bargaining agreement, a memorandum of understanding or any other agreement between the public agency and representatives of the employees. If the employees do not have a representative, compensatory time may be used in lieu of cash overtime compensation only if such an agreement or understanding has been arrived at between the public agency and the individual employee before the performance of work. No agreement or understanding is required with respect to employees hired prior to April 15, 1986, who do not have a representative, if the employer had a regular practice in effect on April 15, 1986, of granting compensatory time off in lieu of overtime pay.
 
 
 46
 ....
 
 
 47
 (b) Agreement or understanding between the public agency and a representative of the employees. (1) Where employees have a representative, the agreement or understanding concerning the use of compensatory time must be between the representative and the public agency either through a collective bargaining agreement or through a memorandum of understanding or other type of oral or written agreement. In the absence of a collective bargaining agreement applicable to the employees, the representative need not be a formal or recognized bargaining agent as long as the representative is designated by the employees.
 
 
 48
 ....
 
 
 49
 (c) Agreement or understanding between the public agency and individual employees. (1) Where employees of a public agency do not have a recognized or otherwise designated representative, the agreement or understanding concerning compensatory time off must be between the public agency and the individual employee and must be reached prior to the performance of work.
 
 
 50
 29 C.F.R. § 553.23 (1991) (emphasis added).
 
 
 51
 This regulation's meaning is plain in two important respects. First, if the employees have selected a representative, an employer may use compensatory time only pursuant to an agreement between the employer and the representative. The concurring opinion in this case concedes that this is "a plausible reading of the regulation," but suggests an alternative interpretation and states that, if its alternative reading were not available, it would invalidate the regulation as contrary to the statute. Conc. op. at 1394. I submit that this reading is the only logical way to interpret the regulation, and the regulation read this way is not contrary to the statute because it is consistent with one of the two equally possible readings of the statute.
 
 
 52
 The regulation must control if it is reasonable. Chevron, supra. The legislative history clearly supports the Secretary's construction of the statute. See S.Rep. No. 159, 99th Cong., 1st Sess. 10-11 (1985), reprinted in 1985 U.S.C.C.A.N. 658-59 ["Senate Report"] ("Where employees have a recognized representative, the agreement or understanding must be between that representative and the employer;" employer's regular practice may constitute an agreement in the case of employees who have no representative); H.R.Rep. No. 331, 99th Cong., 1st Sess. 20-21 (1985), reprinted in 13656 U.S.Cong. Serial Set (Oct. 24, 1985) ["House Report"] ("Where employees have selected a representative, ... the agreement or understanding must be between the representative and the employer;" regular practice constitutes agreement where employees lack representative). Therefore, the Secretary's position that if employees are represented, an employer can only use compensatory time if it reaches an agreement with the representative is reasonable and we are bound by it. See Local 2203, 877 F.2d at 819; Nevada Highway Patrol Ass'n v. Nevada, 899 F.2d 1549, 1553 (9th Cir.1990).
 
 
 53
 Second, the regulation states that employees are deemed to be represented under section 207(o)(2) if they merely designate a representative; the representative need not be recognized by the employer. This means that a state law that prevents an agency from recognizing a public employee union does not preclude the employees from designating a representative for purposes of this section. Again, if reasonable, the Secretary's reading of the provision must control. Congress' choice of words clearly supports this reading. If, as the majority holds, Congress intended that public employees could not designate a representative in states that did not allow collective bargaining, Congress need have gone no further than say that the agreement must be part of a collective bargaining agreement. Instead, the statute states that the agency may provide compensatory time pursuant to "applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees." 29 U.S.C. § 207(o)(2)(A)(i) (emphasis added). The fact that Congress included the possibility of agreement being in some other form indicates that this agreement could be reached in states like North Carolina that do not allow public collective bargaining.
 
 
 54
 The legislative history also provides ambiguous but sufficient support for the proposition that the representative need only be designated, not recognized; the House Report supports the view and the Senate Report does not. Compare House Report at 20, reprinted in 13656 U.S.Cong. Serial Set ("Where employees have selected a representative, which need not be a formal or recognized collective bargaining agent as long as it is a representative designated by the employees, the agreement or understanding must be between the representative and the employer....") with Senate Report at 10-11; reprinted in 1985 U.S.C.C.A.N. 658-59 ("Where employees have a recognized representative, the agreement or understanding must be between the representative and the employer;" an employer may use compensatory time pursuant to a regular practice "[i]n the case of employees who have no recognized representative") (emphasis added). Unfortunately, the report of the Joint Committee on Conference fails to address these differing views. See H.R.Conf.Rep. No. 357, 99th Cong., 1st Sess. 7-10 (1985), reprinted in 1985 U.S.C.C.A.N. 668-71. However, the Senate receded and accepted the House version of the legislation in the Joint Committee on Conference. Id. Thus the House's view supportive of the Secretary should be given more weight than the Senate's view, although even one branch's support would be sufficient to find the Secretary's interpretation reasonable. As the concurring opinion notes, the majority's reliance on an isolated statement in the preamble to the Secretary's final regulation, which was later codified at 29 C.F.R. Part 553, that was contradicted elsewhere in the preamble and in the final regulation itself, cannot require state law to control whether employees have a "representative" under the statute. See conc. op. at 1398 n. 2; 52 Fed.Reg. 2012, 2015 (Jan. 16, 1987). Therefore, the Secretary's interpretation that the representative need only be designated, not recognized, is eminently reasonable and should control this case. See Local 2203, 877 F.2d at 820. But see Nevada Highway Patrol, 899 F.2d at 1554; Dillard v. Harris, 885 F.2d 1549, 1554 (11th Cir.1989), cert. denied, --- U.S. ----, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990).
 
 
 55
 The concurring opinion persuasively refutes the majority's formalistic view that the Fire Fighters have no "representative" under section 207(o) because North Carolina law does not allow the City to recognize one. The concurring opinion goes wrong, in my view, just as the majority does, by forcing one plausible reading of the statute on language that equally supports two such readings and by ignoring the plain import of the Secretary's interpretation of the statute. The Supreme Court has told us in unmistakable terms that we should not substitute our views for that of the agency when the statute is ambiguous, but the majority has done just that. See Chevron, 467 U.S. at 865-66, 104 S.Ct. at 844.
 
 
 56
 The practical result of the majority's decision is that the City can refuse to bargain with the employees' representative with the excuse that state law requires this result, thus unilaterally eviscerating the employees' choice in the matter and effectively circumventing the requirements of the Fair Labor Standards Act. According to the majority, employees who reside in states that prohibit public agencies from engaging in collective bargaining have fewer rights under federal law than their counterparts who live in states with no such prohibition. I do not believe that Congress intended for employees' rights under the Act to hinge upon the mere fortuity of geography.
 
 
 57
 As a panel of this court has previously stated, Congress intended to give employees an element of choice with respect to overtime pay in enacting section 207(o), in addition to providing the state and local governments flexibility in how to pay for overtime work. Abbott v. Virginia Beach, 879 F.2d 132, 136-37 (4th Cir.1989) (quoting House Report at 19), cert. denied, 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990). The Charlotte Fire Fighters have had no real choice in this matter--those hired before April 15, 1986 must abide by the previous City-imposed practice of compensatory time, and those hired later must agree individually, under highly coercive circumstances where they lack real bargaining leverage, to accept compensatory time as the price for accepting the job. I cannot believe that Congress intended such a result. Because the City of Charlotte retains the sole discretion to award compensatory time instead of cash under the majority's analysis, I agree with the district court that the Act does not permit the City to take advantage of the compensatory time option without entering into an agreement with the employees' designated representative.
 
 
 58
 For these reasons, I would affirm the district court's decision below.
 
 
 59
 I am authorized to say that Judge HALL, Judge PHILLIPS, Judge MURNAGHAN and Judge SPROUSE join in this dissent.
 
 
 
 *
 The opinion originally filed May 8, 1992, has been changed only by insertion of the correct version of Chief Judge Ervin's dissenting opinion
 
 
 [1]
 After April 15, 1986, the City has required all new employees to read and sign a statement acceding to its policy of granting compensatory time instead of cash for overtime
 
 
 [2]
 Because we find that the Fire Fighters did not have a representative within the meaning of the regulation, we need not, indeed should not, resolve the hypothetical question of the proper interpretation of the regulations if they had had a representative. Similarly, our disposition of this question negates the necessity of considering whether the regulation constitutes a valid exercise of the authority of the Secretary. We, therefore, decline to express an opinion on these issues. Contrary to the suggestion of the concurring opinion, our decision to decline to resolve these issues is driven by a desire to adhere to our view of the proper scope of appellate review
 
 
 [3]
 The Fire Fighters' reliance on other portions of 29 C.F.R. § 553.23 is similarly foreclosed because they did not have a representative within the meaning of the regulation
 
 
 [1]
 The dissent's interpretation of section 7(o) is irreconcilable with this court's decision in Abbott v. City of Virginia Beach, 879 F.2d 132, 135-36 (4th Cir.1989), cert. denied, 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990). In Abbott, a municipal agency, without reaching an agreement with its employees' designated representative, offered its employees a choice of cash or compensatory time for overtime. We held that a public employer may "enter into individual overtime compensation agreements with individual employees where state law prohibits the agency from entering into agreements with employee representatives." 879 F.2d at 135. There is no principled distinction between this case and Abbott. If section 7(o) prohibits the award of compensatory time to represented employees absent an agreement between the agency and the representative, as the dissent contends, then compensatory time would not have been permissible under the facts in Abbott
 
 
 [2]
 The courts that have held otherwise have done so in reliance on the Department of Labor's stated "intention that the question of whether employees have a representative ... shall be determined in accordance with State or local law and practices." 52 Fed.Reg. 2012, 2015 (Jan. 16, 1987), quoted in Nevada Highway Patrol, 899 F.2d at 1554; Dillard, 885 F.2d at 1556; Abbott, 879 F.2d at 136. This stated intention appears only in the preamble to the final rule codified at 29 C.F.R. part 553. I simply would not allow an interpretation of the regulation to be controlled by the preamble where the regulation affirmatively evidences an intent that the term "representative" not be defined by reference to state law and the preamble itself elsewhere recognizes that "collective bargaining is not a necessary condition for establishing an agreement between an employer and an employee representative." 52 Fed.Reg. at 2015
 
 
 [3]
 The majority mistakenly assumes that the foregoing analysis of the regulation is directed to a "hypothetical" issue not now before the court--namely, whether a public agency would be required to reach an agreement with an employee representative if that representative were recognizable under state law. See majority op. at 1395 n. 2. It is not. It is directed to the majority's interpretation of the regulation in this case. In my view, that interpretation conflicts with the majority's interpretation of the statute. Given this conflict, it is not an option as a matter of proper appellate review to refuse, as the majority does, to consider the Secretary's authority to promulgate the regulation but to reverse the district court. See id. The question, therefore, is not whether appellate review is proper, but whether there has been "proper" appellate review. Id